976 So.2d 347 (2008)
Desiree Roth HARRIS
v.
David Allen HARRIS.
No. 2007-CA-0966.
Court of Appeal of Louisiana, Fourth Circuit.
February 20, 2008.
Rehearing Denied March 12, 2008.
*348 Edith H. Morris, Bernadette R. Lee, Suzanne Ecuyer Bayle, Morris, Lee & Bayle, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
Robert C. Lowe, Jeffrey M. Hoffman, Melanie Lockett, Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P., New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge EDWIN A. LOMBARD).
PATRICIA RIVET MURRAY, Judge.
This is a divorce case. David Allen Harris appeals the calculation of the child support awarded to his former wife, Desiree Roth Harris. For the reasons that follow, we affirm in part, reverse in part, and remand for recalculation.

FACTUAL AND PROCEDURAL BACKGROUND
On January 26, 1996, Mr. and Mrs. Harris were married in New Orleans. On January 24, 2006, Mrs. Harris filed a petition for divorce under La. C.C. art. 102, She also requested primary domiciliary custody of the one minor child of the marriage and child support. At that time, the child was nine years old.
On September 20, 2006, a judgment of divorce was granted. On December 7, 2006, and February 5, 2007, hearings were held on several issues, including child custody and child support. At the hearings, four witnesses testified on the child support issue: (i) Mr. Harris; (ii) Mrs. Harris; (iii) John Maggiore, Mrs. Harris' expert certified public accountant; and (iv) Gary Arnold, Mr. Harris' supervisor at EDG Consulting Engineers ("EDG").
At the time of the hearings, Mr. Harris had been employed by EDG as an engineering technician for eight years. During the marriage, Mr. Harris regularly worked for EDG doing both domestic and overseas assignments. Around the time of the divorce  before according to Mr. Harris and after according to Mrs. Harris and Mr. Harris' supervisor  Mr. Harris requested to change his work assignments to only domestic work. EDG granted his request. As a result, the number of hours Mr. Harris works for EDG was reduced to about thirty hours a week.
At the hearing, it was established that the community property to be partitioned includes five pieces of immovable property: the former matrimonial domicile in New Orleans where Mrs. Harris and the minor child reside; a family home in Lacombe, *349 Louisiana where Mr. Harris resides; and three rental properties in New Orleans.[1] Mr. Harris currently manages the rental properties. As a result, he collects the rent and pays the mortgages and other expenses on those properties.
At the hearing, Mrs. Harris introduced an "Obligation Worksheet A  Joint Custody" (the "Worksheet"), as provided for in La. R.S. 9:315.20, for purposes of calculating the total support obligation. The worksheet reflects that Mrs. Harris, who is employed at Capital One, has a monthly gross income of $6,381. The worksheet further reflects that Mr. Harris has a monthly gross income of $10,282. The latter figure was calculated by Mrs. Harris' expert CPA, Mr. Maggiore. Mr. Maggiore testified that Mr. Harris' monthly income has two components: (i) income from EDG, and (ii) rental income.
As to the rental income, Mr. Maggiore testified that he calculated a monthly net rental income of $2,350 based on figures he obtained from a spread sheet that Mr. Harris had prepared. The spread sheet listed the rental income and mortgage payments on the rental properties through November 2006. As of that date, the schedule showed that the gross rents totaled $8,250 and the mortgages on those properties totaled $5,900, netting $2,350.
As to Mr. Harris' income from EDG, Mr. Maggiore testified that he calculated a monthly employment income of $7,932 based on the documentation that was supplied in discovery by EDG. The documentation EDG supplied consisted of Mr. Harris' pay records for the seven and one-half month period from December 3, 2005 to July 14, 2006.[2] From those records, Mr. Maggiore extrapolated Mr. Harris' monthly employment income as $7,932.
Combining the net rental income and the employment income, Mr. Maggiore calculated Mr. Harris' total monthly income as $10,282, which as noted is the figure Mrs. Harris listed on the Worksheet.
On March 5, 2007, the trial court rendered judgment awarding joint custody with Mrs. Harris as the designated domiciliary parent. The trial court also awarded Mrs. Harris child support in the amount of $1,441.87. In its reasons for judgment, the trial court, adopting Mr. Maggiore's calculations and the Worksheet figures, stated:
The Court finds that Mr. Harris has a monthly income of $10,282.00. Mr. Harris' income is derived from employment in the amount of $7,932.00 as well as rental income which is a total of $8,250.00 minus $5,900.00 in expenses for a net rental income of $2,350.00. Although the rental income comes from community property, Mr. Harris refuses to give Mrs. Harris the portion to which she is entitled. Under the child support guidelines Mr. Harris must pay Ms. Harris $1,441,87 per month in child support (See Child Support Worksheet, D.H. #7).
On April 11, 2007, the trial court denied the motion for new trial filed by Mr. Harris. This appeal followed.

DISCUSSION
The statutory guidelines for calculating child support are set forth in La. R.S. 9:315 to 9:315.20. Deviations by the trial court from the child support guidelines *350 shall not be disturbed on appeal absent a finding of manifest error. La. R.S. 9:315.17. On appeal, Mr. Harris asserts that the trial court's child support calculation in this case is manifestly erroneous because it erred in the following four respects: (i) excluding documentation of Mr. Harris' current income; (ii) deeming Mr. Harris voluntarily underemployed and thus imputing income to him; (iii) imputing all of the rental income for the three rental properties owned by the community to Mr. Harris; and (iv) relying on Mrs. Harris' child support worksheet, which misstated the net child care cost and erroneously included lunch money as an expense. We separately analyze each of these alleged errors.

CURRENT INCOME DOCUMENTATION
Mr. Harris contends that the income documentation Mr. Maggiore relied upon, and the trial court adopted in calculating his monthly average earnings of $7,932, is improper in that it does not document Mr. Harris' current income as required by La. R.S. 9:315.2(A), which states:
Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. . . . Suitable documentation of current earnings shall include but not be limited to pay stubs, employer statements, or receipts and expenses if self-employed. The documentation shall include a copy of the party's most recent federal tax return. A copy of the statement and documentation shall be provided to the other party.
La. R.S. 9:315.2(A); Drury v. Drury, 01-0877, p. 8 (La.App. 1 Cir. 8/21/02), 835 So.2d 533, 539 (holding that documentation is essential to making the child support determination). Mr. Harris argues that he is currently employed doing domestic work only and that he currently earns less than when he worked overseas.[3]
Mr. Harris also cites the December 7, 2006 consent judgment the trial court signed, which states:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that David Allen Harris and his counsel, S. Guy deLaup, shall meet with John Maggiore, Desiree Roth Harris' expert CPA, to review what documents are outstanding. David Allen Harris shall either produce the documents that John Maggiore requests or he shall execute releases prepared by counsel for Desiree Roth Harris so that John Maggiore can obtain the documents.
Mr. Harris argues that the outstanding documents that the consent judgment contemplated included his outstanding income documentation. The hearing on the child support was not completed on December 7, 2006. The trial court thus left the matter open until February 5, 2007. In January 2007, Mr. Harris delivered such outstanding income-related documents to Mr. Maggiore; however, Mr. Maggiore declined to review those documents because Mrs. Harris' counsel instructed him not to do so. The reason for that instruction was that the trial court at the December 2006 hearing imposed a restriction on the evidence that could be used in calculating Mr. Harris' employment income; the trial court limited the evidence to the documentation provided in discovery by Mr. Harris' *351 employer. (The trial court's reason for imposing the restriction was Mr. Harris' failure to comply with Mrs. Harris' discovery requests.) Mr. Harris contends that the restriction the trial court imposed on the evidence was contrary to the relevant provision of the December 7, 2006 consent judgment. Mr. Harris further argues that Mr. Maggiore incorrectly calculated his income based solely on past income documentation.
We find Mr. Harris' reliance on the requirement in La. R.S, 9:315.2(A) that child support be calculated; based on current income documentation is misplaced for two reasons. First, neither party complied with the mandatory requirement in La. 9:315.1(A) that they submit a copy of their most recent tax return. (We address this omission further elsewhere in this opinion.) Second, La. R.S. 9:315.2(B) contains an exception to the requirement that child support be calculated based on current income for cases in which a spouse is voluntarily underemployed. When one spouse is determined to be voluntarily underemployed, the child support is to be calculated based on that spouse's income potential. La. R.S. 9:315.2(B)(providing that "[i]f a party is voluntarily unemployed or underemployed, his or her gross income shall be determined as set forth in R.S. 9:315.11.") As discussed below, we find no error in the trial court's implicit finding that Mr. Harris is voluntarily underemployed.

VOLUNTARY UNDEREMPLOYMENT
Mr. Harris contends that the trial court erred in finding him voluntarily underemployed and thus imputing income of $7,932 per month to him.[4] Underemployment is recognized in La. R.S. 9:315.11, which provides that "[i]f a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years." La. R.S. 9:315.11(A). Underemployment is also included in the definition of income, which is defined to mean:
(a) Actual gross income of a party, if the party is employed to full capacity; or
(b) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.
La. R.S. 9:315(5).
Voluntary underemployment for purposes of calculating child support is a question of good faith on the obligorspouse in reducing his income. Hansel v. Hansel, 00-1914, p. 6 (La.App. 4 Cir. 11/21/01), 802 So.2d 875, 880 (citing Gould v. Gould, 28,996 (La.App. 2 Cir. 1/24/97), 687 So.2d 685). "Voluntary underemployment is a fact driven consideration." Koch v. Koch, 97-1600, p. 5 (La.App. 4 Cir. 4/22/98), 714 So.2d 63, 66. When determining if a party is voluntarily underemployed for purposes of calculating a child support obligation, the court shall consider that party's earning capacity in light of all circumstances. Peacock v. Peacock, 39,950 *352 p. 14 (La.App. 2 Cir. 5/4/05), 903 So.2d 506, 516. "A party shall not be deemed voluntarily unemployed or underemployed if . . . the unemployment or underemployment results through no fault or neglect of the party." La. R.S. 9:315(C)(5)(b).
Mr. Harris contends that his alleged voluntarily underemployment did not result from his own fault or neglect and that he was in good faith. According to Mr. Harris, he eliminated overseas work to spend time with his son at Mrs. Harris' request. For these reasons, he contends that the trial court manifestly erred when it found he was voluntarily underemployed. He argues his circumstances are analogous to those in Gould, supra.
In Gould, the question was whether a father who reduced his work hours by taking off every other Friday to drive ten hours to spend time with his children was voluntarily underemployed. In refusing to find the father voluntarily underemployed, the trial court held it would be "inequitable" to punish the father for the time he had to miss work to regularly visit his children. Affirming that finding, the court of appeal held that "the time spent travelling to see his kids should not be charged as his own fault or neglect" under La. R.S. 9:315. Gould, 28,996 at p. 13, 687 So.2d at 693.
Mr. Harris' situation is different from that of the father in Gould. In this case, there is no showing that Mr. Harris is unable to work more than thirty hours a week. Rather, he testified that he requested to stop working overseas, and thereby reduced his work hours, to spend more time with his son. However, Mrs. Harris testified that during the years of their marriage Mr. Harris never cut back on his overseas work to be a father. According to both Mrs. Harris and Mr. Arnold, Mr. Harris' supervisor, Mr. Harris did not make the request until after the divorce was filed.
Mr. Arnold testified that Mr. Harris requested "for personal reasons" in early 2006 to do only domestic work and that EDG honored his request. Because EDG's work is primarily overseas, Mr. Harris' work hours were reduced to about thirty hours a week. Mr. Arnold testified that if Mr. Harris had not requested to do only domestic work he would be working more than thirty hours a week and making about the same salary as he made before.
As noted, Mr. Harris testified that he requested, at his wife's request, not to work overseas so that he could spend more time with his son. He further testified that he made this request six months before February 2006 when he and Mrs. Harris separated. Mr. Harris, however, had difficulty answering the question of in what month he made that request. After being instructed by the trial court that he was required to answer the question, Mr. Harris testified that he made the request in August or September 2005. The trial court, however, apparently believed that Mr. Harris' request to modify his work was not in good faith. Based on our review of the record, we cannot say this factual finding is manifestly erroneous.
Given our finding that the trial court correctly concluded (albeit implicitly) that Mr. Harris is voluntarily underemployed, the issue becomes whether the trial court correctly determined his income potential. Absent evidence that work is not available or is available only at a lower salary, the wage earned prior to voluntary underemployment is the best estimate of the underemployed spouse's potential income. Glover v. Glover, 28,493, p. 4 (La. App.2d Cir.6/26/96), 677 So.2d 659, 661; Havener v. Havener, 29,785, p. 11 (La. App.2d Cir.8/20/97), 700 So.2d 533, 539-40. In this case, the trial court used the figure *353 calculated by Mr. Maggiore, which was based on Mr. Harris' income for the period immediately before he stopped working overseas.[5] We find no error in the trial court using that figure as Mr. Harris' earning potential for purposes of calculating child support.

RENTAL INCOME
Mr. Harris contends that the trial court erred in attributing all of the rental income from the three community property rental properties to him. In support he cites the Civil Code articles pertaining to co-ownership of community property between the time of termination and partition of the community. La. C.C. art. 2369.1 provides:
After termination of the community property regime, the provisions governing co-ownership apply to former community property, unless otherwise provided by law or by juridical act.
When the community property regime terminates for a cause other than death or judgment of declaration of death of a spouse, the following Articles also apply to former community property until a partition, or the death or judgment of declaration of death of a spouse.
LSA-C.C. Art. 2369.1
Each spouse owns an undivided one-half interest in former community property and its fruits and products.
LSA-C.C. Art. 2369.2
A spouse has a duty to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect.
LSA-C.C. Art. 2369.3
During their marriage, the parties purchased three rental properties. Pursuant to Article 2369.3, Mr. Harris is managing the rental properties, and he is required to account for the rentals, "fruits and products," at the partition. Mr. Harris thus argues that the trial court erred in attributing all of the rental income to him for purposes of calculating the child support award. He argues that none of the rental income should have been included in the calculation. He claims the rental income is a property partition issue, not a custody issue. Moreover, he argues that he will be forced to account for the rental income twice  once in the child support calculation and again in the partition.
The trial court in its reason for judgment acknowledged, as Mr. Harris contends, that the rental income is community property. Nonetheless, the trial court attributed all the net rental income to Mr. Harris because of his alleged failure to share any of this income with Mrs. Harris. Although we understand the trial court was attempting to alleviate the unfairness of Mr. Harris refusing to share the rental income, no support exists for attributing all of the rental income to Mr. Harris.[6] The trial court's imputation of all the rental income to Mr, Harris ignores La. C.C. art. 2369.2, which provides that each spouse owns an undivided one-half interest *354 in the fruits  rental income  from the former community property. Based on this article, Mr. and Mrs. Harris each own one-half of the rental income as a matter of law until a partition occurs. The trial court thus erred in attributing all the rental income to Mr. Harris.
Rental income, however, is a component of gross income under the guidelines. The definition of "gross income" under La. R.S. 9:315 includes:
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
La. R.S. 9:315(c). Although Mr. and Mrs. Harris each own-half of the rental income, one or both of them would have been required to report that income on their tax return. However, as noted elsewhere, neither of them produced a copy of their most recent tax returns at the child support hearing. See La. R.S. 9:315.2(A)(mandating that "[t]he documentation shall include a copy of the party's most recent tax return."). The record does not contain sufficient evidence to determine what the rental income is on the community rental properties.[7] We thus remand for a calculation of the rental income. Each party's one-half share of that rental income is to be included in their respective income for purposes of recalculating child support.[8]

NET CHILD CARE COSTS
Mr. Harris next contends that the trial court erred in allowing Mrs. Harris to include as an expense on the Worksheet the monthly child care expenses of $151.66. He does not dispute the reasonableness or amount of the child care expenses; rather, he contends that Mrs. Harris' child care figure in the Worksheet, which the trial court adopted, is erroneous because she failed to deduct from that amount the value of the federal income tax credit for child care as required by La. R.S. 9:315(7) and 9:315.3.[9] We agree. See Lewis v. Lewis, 624 So.2d 1211, 1211-12 (La.1993)(Louisiana Supreme Court granted writ application and remanded to the trial court with an order to fix as part of the child support award "net child care costs, which constitute reasonable costs minus a reasonably estimated prospective credit to federal income tax for child care.")
*355 "Net child care costs" are defined in La. R.S. 9:315(7) as "reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care." La. R.S. 9:315(7). Under the guidelines, "[n]et child care costs shall be added to the basic child support obligation. The net child care costs are determined by applying the Federal Credit for Child and Dependent Care Expenses provided in Internal Revenue Form 2441 to the total or actual child care costs." La. R.S. 9:315.3
Accordingly, we reverse the trial court's award of $151.66 in child care expenses, and remand to the trial court for the recalculation of the award using the net child care costs in conformity with the above statutory guidelines.

SCHOOL LUNCH MONEY
Mr. Harris contends that the trial court erroneously allowed as an expense in the Worksheet a $45 monthly fee for lunch money. Food is considered to be a part of the basic child support obligation. See Walker v. Walker, 02-606, p. 4 (La. App. 3 Cir. 12/4/02), 832 So.2d 1098, 1102 (noting that clothing generally is part of basic support obligation under La. C.C. art. 227). Such costs already are included in the basic child support obligation. Nonetheless, certain items are permitted to be added to the basic support obligation if those items fit the statutory criteria set forth in La. R.S. 9:315.6, which provides:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.
(2) Any expenses for transportation of the child from one party to the other.
La. R.S. 9:315.6. The comment to this statutory provision states that in 2001 the Legislature added clarifying language to paragraph (1) to specify the particular types of private school expenses that can be added to the basic child support amount. School lunch money, however, is not one of those enumerated types of expenses. The trial court therefore erred in allowing lunch money to be included in the calculation.

DECREE
For the reasons set forth above, the trial court judgment awarding child support in the amount of $1,441.87 per month is reversed, and the matter is remanded for a recalculation of the child support award in a manner consistent with the views expressed herein. On remand, the trial court is ordered to recalculate the net community property rental income and to divide it equally between Mr. and Mrs. Harris for purposes of calculating child support. The trial court is further ordered to fix as part of the child support award net child care costs as defined and required by the guidelines. The trial court is still further ordered not to allow school lunch money as an expense in the calculation. In all other respects, the amounts included in the trial court's original calculation are affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] A separate partition hearing is currently pending in Civil District Court.
[2] According to Mr. Maggiore, Mr. Harris was more of a subcontractor than an employee; Mr. Harris submitted invoices to EDG as well as expenses. The employment records that EDG supplied thus included invoices and expenses submitted by Mr. Harris.
[3] At the hearing, he attempted to introduce a spread sheet that calculated his current income with DRG based on his current work schedule of about thirty-one hours per week with no overseas work assignments. The spread sheet, which Mr. Harris proffered, reflects currently monthly average earnings of $5,229.90.
[4] Although the trial court's reasons for judgment do not include an express finding of underemployment, the trial court stated at the hearing that Mr. Harris is voluntarily under-employed. Moreover, Mr. Harris acknowledges that the trial court's finding that Mr. Harris is voluntarily underemployed is implicit in its adoption of Mr. Maggiore's calculation of Mr. Harris' employment income, which is based on the hours Mr. Harris worked before he stopped doing overseas work.
[5] Although Mr. Harris contends that there currently are no existing overseas employment opportunities available to him, Mr. Arnold testified that in the future there could be overseas positions available. Particularly, Mr. Arnold testified that the company has reassigned other personnel to take Mr. Harris place; however, he testified that "[o]n upcoming projects it could be" available.
[6] If Mr. Harris is failing to share the rental income with her, Mrs. Harris has other legal recourse to compel him to do so.
[7] In this regard, we note that Mr. Maggiore testified he calculated the net rental by subtracting, only the mortgage amounts from the rentals; he did not factor into the calculation any of the other ordinary and necessary expenses. Mr. Harris also points out that the trial court refused to consider the rental property expenses that he attempted to submit.
[8] The parties point out that the consent judgment the trial court signed on May 3, 2007 (after the judgment appealed from) includes the following provision:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the amount of child support shall be recalculated after the partition of community property to account for each party's share of the rental income.
[9] Although Mr. Harris contends that the correct amount for net child care is $121.33, there is no evidence in the record on which to make such a calculation. As noted, Mrs. Harris' tax returns were not introduced into evidence and that there is no evidence in the record regarding what, if any, tax credit she received.