STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1270


KATHERINE TRAHAN ASHWORTH

VERSUS

LARRY LEROY ASHWORTH


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2008-10999 L
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Billy Howard Ezell, Judges.


AFFIRMED.

**Honorable T. Barrett Harrington**
**Judge, Crowley City Court**
**P. O. Box 225**
**Crowley, LA 70527**
**Telephone: (337) 788-4117**
**COUNSEL FOR:**
    **Defendant/Appellant - Larry Leroy Ashworth**

**Larry Thomas Richard**
**Miller & Richard, L.L.C.**
**601 Clegg Street**
**Rayne, LA 70578**
**Telephone: (337) 334-2147**
**COUNSEL FOR:**
    **Defendant/Appellant - Larry Leroy Ashworth**

**Burleigh G. Doga**
**Burleigh G. Doga, Ltd.**
**Post Office Drawer 265**
**Crowley, LA 70527-0265**
**Telephone: (337) 783-8843**
**COUNSEL FOR:**
     **Plaintiff/Appellee - Katherine Trahan Ashworth**

**THIBODEAUX, Chief Judge.**

The defendant, Larry Ashworth, appeals from a judgment finding the plaintiff, Katherine Ashworth, free from fault in their divorce. He further appeals from a judgment awarding her $200.00 per month in final spousal support. Finding no abuse of discretion by the trial court, we affirm the judgments appealed.

## I.

## ISSUES

We must decide:

(1) whether the trial judge manifestly erred in finding no fault on the part of the plaintiff in the dissolution of the marriage;

(2) whether the trial judge abused her discretion and allowed hearsay testimony regarding the infidelity of the defendant; and,

(3) whether the trial judge abused her discretion in awarding the plaintiff $200.00 per month in spousal support.

## II.

## FACTS AND PROCEDURAL HISTORY

Katherine Ashworth sought a determination by the trial court that she was not at fault for the dissolution of her marriage to Larry Ashworth and that she was entitled to and in need of final periodic spousal support. Larry Ashworth contended that Katherine was at fault by reason of abandonment when she left the matrimonial domicile in 2007 and that she was not entitled to, or in need of, spousal support.

In September 2009, the trial court heard testimony and argument on the issue of abandonment and determined that Katherine was free from fault in the dissolution of the marriage. The issue of further entitlement to final spousal support was referred to an intake conference. Larry Ashworth filed an appeal of

the trial court's September 30, 2009 judgment. We dismissed the appeal as premature, as the judgment was not a final, appealable judgment (*Ashworth v. Ashworth*, 10-215 (La.App. 3 Cir. 10/6/10), 46 So.3d 1291), and we remanded the case to the trial court for further proceedings.

On January 24, 2011, the trial court held a hearing on Katherine's request for final spousal support and issued a judgment finding that Katherine had shown need for, and that Larry had the ability to pay for, final spousal support in the amount of $200.00 per month. A judgment awarding that amount was signed on April 6, 2011, and is now being appealed by Larry Ashworth, along with the September 30, 2009 judgment regarding Katherine's lack of fault in the divorce.

Larry Ashworth assigns three errors by the trial court regarding: (1) the criteria for abandonment; (2) hearsay testimony; and (3) Katherine's need for spousal support. We find no merit in Larry Ashworth's alleged errors, and we affirm the trial court for the following reasons.

## III.

## <u>STANDARD OF REVIEW</u>

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993).

> In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. The factual findings of the trial court are therefore to be accorded very substantial weight on review.

*Pearce v. Pearce*, 348 So.2d 75, 78 (La.1977) (citations omitted).

IV.

**LAW AND DISCUSSION**

The court is given authority to award spousal support "to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage." La.Civ.Code art. 111. Fault that precludes spousal support includes misconduct of a serious nature that is "an independent contributory or proximate cause of the separation." *Pearce*, 348 So.2d at 77. "*Fault* continues to mean misconduct [that] rises to the level of one of the previously existing fault grounds for legal separation or divorce." La.Civ.Code art. 111, Comment (C). Prior to its repeal, La.Civ.Code art. 138 provided grounds for separation as adultery, habitual intemperance, excesses, cruel treatment or outrages, making living together insupportable, and abandonment. *Allen v. Allen*, 94-1090 (La. 12/12/94), 648 So.2d 359.

Here, Larry asserts that Katherine abandoned the matrimonial domicile and that it was error for the trial court to find her free from fault on the basis of Larry's failure to ask her to return. This argument has no merit.

*Abandonment*

Abandonment can serve as grounds for fault only if one of the parties withdrew from the matrimonial domicile without lawful cause *and* constantly refused to return. La.Civ.Code art. 143 (repealed); *Von Bechman v. Von Bechman*, 386 So.2d 910 (La.1980); *Mercer v. Mercer*, 95-1257 (La.App. 3 Cir. 4/3/96), 671 So.2d 937. Under the second element, if a spouse has cause or justification for leaving, that spouse is not guilty of abandonment. *Pardue v. Pardue*, 509 So.2d 708 (La.App. 3 Cir. 1987); *Harrrington v. Campbell*, 413 So.2d 297 (La.App. 3 Cir. 1982). Likewise, the third element, a constant refusal to return, is essential. For abandonment, "a party cannot merely show that the spouse left the common

3

dwelling and then rely upon the spouse's failure to prove a case grounded upon fault." *Von Bechman*, 386 So.2d at 912 (citation omitted).

Katherine testified at trial that, approximately ten days before the separation, she happened to drive down a street and saw a woman sitting with Larry in his truck. When she stopped to ask what was going on, Larry told her not to ask questions and to go home. Katherine testified that she went to her mother's house instead and was told by her brother and her niece that Larry was giving the girl in the truck, and her roommate, money in exchange for sex. Katherine testified that other people confirmed Larry's infidelity. The couple argued, and Katherine subsequently told Larry to leave. Larry refused to go without a court order.

On October 31, 2007, Katherine packed and left the couple's domicile. Larry admitted at trial that he never asked Katherine to return. By the end of January 2008, Larry had a girlfriend living with him in the domicile with whom he admitted sexual relations. He allowed her to remove his wife's name from the mailbox and insert her own. In April 2008, Larry drove his girlfriend to his wife's location and allowed her to drive Katherine's car away in front of Katherine's friends. Katherine testified that this event extinguished her hopes of reconciliation. Subsequently, Katherine filed for divorce on September 30, 2008.

It is undisputed that Katherine was the one to leave the couple's domicile in October 2007. Therefore, the first criterion for abandonment is present. However, under the second criterion, if she had justification or lawful cause to leave, she is without fault for abandonment. Lawful cause which justifies the withdrawal from the common dwelling is that which is *substantially* equivalent to a cause giving the withdrawing spouse grounds for a separation. *Langton v. Langton*, 442 So.2d 1308 (La.App. 3 Cir. 1983). However, under *Von Bechman*, 386 So.2d 910, there is no requirement that Katherine prove Larry's adultery.

4

Katherine suspected adultery based upon what she had seen and heard. Katherine saw the woman with Larry in the truck and confronted them. She testified that her brother had a cell phone picture of the woman with Larry in his truck and a recording of Larry's complaint when a simultaneous call came in from Katherine, which Katherine saw and heard. Katherine further testified that she had a picture indicating infidelity, but the camera was stolen. She also testified that the roommate of the woman in the truck had admitted giving Larry sexual favors for money. Larry admitted to seeing the "ladies" and paying utility bills for the roommate but denied sexual relations. His trial testimony was spurious and unconvincing.

The trial court found that, based upon what Katherine had seen, what she had been told, and what had been admitted, Katherine had a reasonable belief that Larry was being unfaithful and that she was justified in leaving. The trial court had also heard testimony by the roommate of the woman in the truck. Both women appeared to have drug problems, as the woman in the truck was in drug rehabilitation, and Larry admitted that he suspected the roommate of having drug problems. In court, the roommate denied sexual relations with Larry and denied talking to "Kat" in years. The judge made it clear that she did not believe that the roommate had spoken a word of truth.

Domestic issues turn largely on evaluations of witness credibility, and the trial judge has much discretion in such matters. *Pearce*, 348 So.2d at 78. Here, the trial court obviously made credibility determinations and found that Katherine's withdrawal from the common dwelling was justified. This decision was within the trial court's discretion.

The third criterion for abandonment is that the abandoned spouse desired the other spouse's return and the exiting spouse constantly refused to return

5

to the matrimonial domicile. *See Von Bechman*, 386 So.2d 910, and *Adkins v. Adkins*, 42,076 (La.App. 2 Cir. 4/11/07), 954 So.2d 920.

In *Von Bechman*, the Louisiana Supreme Court found that, where the husband changed the locks on the domicile a month after the wife's departure, told her he was happier once she had left, and never requested that she return, the claim for abandonment was properly dismissed. Similarly here, both Katherine and Larry testified that Larry never asked Katherine to return and that he had a live-in girlfriend within three months of Katherine's departure. Further, Larry's actions regarding the girlfriend's name on the mailbox and the girlfriend's use of the family vehicle indicate that Larry did not desire Katherine's return. These events occurred well before Katherine filed for divorce. Moreover, Katherine testified that Larry finally indicated that he did not know why he was unfaithful but that he was happy in his current situation.

Larry argues that Katherine told friends and family that he was having sex with crack whores and that this conduct made continuing to live with her insupportable; therefore, he never asked her to return. Larry puts the cart before the horse. A party is not precluded from receiving spousal support due to a reasonable, justifiable response to the other spouse's initial acts. The Louisiana Supreme Court has held:

> An association which implies adultery naturally brings on marital discord. A spouse who perceives infidelity may become quarrelsome or hostile. Such a reasonable reaction does not constitute legal fault. The suspicion of adultery causes the break-up and not the reaction. A spouse who reacts should not be precluded from receiving alimony solely because of his or her response.

*Allen v. Allen*, 648 So.2d at 362.

Larry testified that, until a week before the separation, he and Katherine had a good relationship; he never suspected her of adultery, and there

6

was no misconduct of any kind on her part. Accordingly, the evidence yields no basis for convincing us that Katherine was at fault for the dissolution of the couple's marriage, and we find, like the trial court, that Katherine has proved her freedom from fault in the separation and divorce.

*Hearsay*

Larry contends that the trial court erred by allowing Katherine to give hearsay testimony regarding his alleged infidelity because she did not call her brother or niece to corroborate Katherine's testimony. We find no abuse of discretion on the part of the trial court. The testimony allowed does not conform to the definition of hearsay.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). In this case, the trial court made it clear that she was allowing Katherine's statement regarding what others told her about Larry's infidelity, not to prove the truth of the infidelity, but to prove the reasonableness of Katherine's subsequent actions in leaving the domicile.

More specifically, upon the objections of Larry's attorney, the trial judge stated: "I'm not going to allow the testimony for purposes of the truth. I'm going to allow it for purposes of why [Katherine] took the action she took." Later in the trial, when Larry's counsel again referred to Katherine's testimony regarding what others told her about Larry's infidelity, the trial court repeatedly clarified the purposes for which she had allowed the testimony, not to prove the truth regarding Larry's infidelity, but to show reasonable justification for Katherine's departure from the matrimonial domicile.

7

*Final Periodic Support*

The court is authorized to award final spousal support under La.Civ.Code art. 112 based upon the needs of the claimant spouse and the ability of the other spouse to pay support. The article provides in pertinent part:

> A. When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.
>
> B. The court shall consider all relevant factors in determining the amount and duration of final support. Those factors may include:
>
> (1) The income and means of the parties, including the liquidity of such means.
>
> (2) The financial obligations of the parties.
>
> (3) The earning capacity of the parties.
>
> . . . .
>
> C. The sum awarded under this Article shall not exceed one-third of the obligor's net income.

Larry contends that the trial court erred in finding that Katherine was in need of support and in awarding her $200.00 per month in spousal support. We disagree. Katherine's affidavit of income and expenses shows $1,911.00 in monthly income ($611.00 in social security disability, plus $1,300.00 for sitting with the elderly) and $2,152.76 in monthly expenses, indicating that Katherine has a monthly shortfall of $241.76 and, therefore, has need of spousal support. Larry's affidavit of income and expenses shows a net monthly income of $6,188.12 and monthly expenses of $2,815.87, indicating that Larry has a monthly surplus of $3,372.25 and, therefore, has the ability to pay spousal support.

At trial, the court heard Katherine's testimony regarding her income and expenses, item by item, and the defendant had the opportunity to cross-examine Katherine. A forty-dollar item on Katherine's expense list was for her

8

adult son and was ending the following month; therefore, that item was dropped, and the court reduced Katherine's monthly shortfall from $241.76 to $200.00. Larry's counsel continued to argue that Katherine picked up extra sitting jobs every month at $100.00 per day;[1] in his appellate brief, he argues that Katherine worked eleven extra days in the two months preceding trial, increasing her actual income by $550.00 per month. This snapshot account is wholly misleading and misrepresentative of Katherine's income, which is tenuous and unpredictable as it is based upon the life-span of an ill and elderly patient and upon the sporadic health of the other sitters who take care of her.

In questioning Katherine about her work as a sitter, the trial court determined that in a one-year period, Katherine earned eleven extra days in the final three months, up to the date of trial. She earned nothing extra in the first nine months and had earned nothing extra in the current month at the time of trial. Katherine's only client was a ninety-year-old patient, and she shared the patient with three other sitters. The extra income in the two months immediately preceding the month of trial occurred when one of the other sitters had a mild stroke, and Katherine and the remaining sitters picked up the stricken sitters days. Katherine testified that her work was word-of-mouth, that she called former clients to find new work, but that she had only the one ninety-year-old patient and no other work guaranteed after this patient dies. Hence, even the $1,300.00 that Katherine shows as monthly sitting income is tenuous; even more tenuous is the ability to earn extra income.

The trial court found that Katherine's sitting income was speculative, that it could take a while to find work when the current patient passes away, and that any extra days picked up were merely a buffer for potential upcoming gaps in

---

[1]It is unknown whether Katherine's sitting job paying $100.00 "per day" is reflective of twenty-four hours of work, or twelve hours of work, or eight hours of work; or whether the next sitting job will pay the same fee.

Katherine's employment.  We find no abuse of discretion in the trial court's refusal to increase Katherine's stated income or in its refusal to further reduce the amount of spousal support to Katherine due to the nature of her work.

V.

## CONCLUSION

Based upon the foregoing, we affirm the trial court's judgment of September 30, 2009, finding Katherine Ashworth free from fault in her divorce. We further affirm the trial court's judgment of April 6, 2011, awarding Katherine $200.00 per month in final periodic spousal support from Larry Ashworth.  All costs of this appeal are assessed to Larry Ashworth.

**AFFIRMED**.