# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 11-1286

LANEY RAY BARLOW, JR.

VERSUS

SANDRA GUILLOT BARLOW

**\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 42083-A
HONORABLE F. RAE SWENT, JUDGE AD HOC

**\*\*\*\*\*\*\*\*\***

JAMES T. GENOVESE
JUDGE

**\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

S. Douglas Busari
S. Douglas Busari & Associates, LLC
506 E. Green Street
Post Office Box 168
Tallulah, Louisiana 71284
(318) 574-2955
Counsel for Plaintiff/Appellant:
    Laney Ray Barlow, Jr.

John Scott Sartin
406 Prairie Street
Winnsboro, Louisiana 71295
(318) 435-1224
Counsel for Appellee/Defendant:
    Sandra Guillot Barlow

**GENOVESE, Judge.**

In this domestic case, Plaintiff, Laney Ray Barlow, Jr., appeals the trial court's judgment relative to child support, final periodic spousal support, and contempt of court. For the reasons set forth below, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute is extremely and exceptionally contentious. Due to the discordance of the parties, it is necessary to chronicle the procedural history[1] of this case in order to effectuate a proper legal review of the case on appeal.

On December 7, 2006, Laney Ray Barlow, Jr. (Ray) filed a Petition for Divorce and Ancillary Matters against Sandra Guillot Barlow (Sandra). Though two children were born of their marriage, only one, Ashley, was a minor when the petition was filed. Also on December 7, 2006, Ray and Sandra signed a Consent Judgment of Temporary Custody which addressed custody of Ashley, use and possession of vehicles and the marital home, and stipulated that Ray would "deposit $500[.00] after each pay day into the checking account of Sandra . . . until further order of this court." It further provided that "a hearing on the issues of custody, support[,] and possession of the marital home shall be held on the 1st day of February, 2007." The Consent Judgment of Temporary Custody was signed by Ray; his counsel at the time, Ann Siddall; Sandra; and, the presiding judge at the time, Judge Kathy Johnson.

On December 29, 2006, Sandra filed an Answer and Reconvention seeking joint custody, child support, to be named domiciliary parent, exclusive use of the

---

[1]Not included in this history are the filings of pleadings which are not relevant to the present appeal, i.e., substitution of counsel.

marital home, and both interim and final periodic spousal support. An Order signed by Judge Johnson set a hearing on these issues on February 5, 2007; however, the record does not contain evidence that a hearing was held.

On April 9, 2007, Sandra filed a Motion for Contempt for Violation of Custody and Support Orders, Modification of Custody and Support Provisions, and Protective Orders. Sandra alleged that Ray violated several provisions of the December 7, 2006 Consent Judgment of Temporary Custody and that "the periods of physical custody exercised by [Ray] have been detrimental to the health and well[-]being of the minor child." Sandra requested Ray's custody of Ashley be suspended until a hearing could be held. Judge Johnson set Sandra's motion for hearing on April 19, 2007, suspended Ray's custody of Ashley until said hearing, and appointed an attorney, Anna Ferguson, to represent Ashley.

On April 10, 2007, Ray filed a Motion and Order to Revise Ex Parte Order, asserting that prior to the filing of Sandra's motion the previous day, a hearing in this matter was already scheduled for May 1, 2007, for which Ray had already subpoenaed witnesses. Further, Ray complained that Sandra's ex parte request to have his custody of Ashley suspended violated the "very narrow limitations that permit the issues of an ex[]parte order of temporary custody" as set forth in La.Code Civ.P. art. 3945.[2] Judge Johnson signed an Order wherein the suspension

_____

[2]Louisiana Code of Civil Procedure Article 3945(B) specifies:

An ex parte order of temporary custody of a minor child shall not be granted unless:

    (1)    It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition.

    (2)    The applicant's attorney certifies to the court, in writing, either:

2

of Ray's physical custody was rescinded and reverted the date of the next hearing from April 19, 2007, back to May 1, 2007.

On April 20, 2007, Ray filed a Petition for Rule to Show Cause seeking to have the community property that he and Sandra shared listed for sale. Judge Johnson signed an Order also setting this issue for hearing on May 1, 2007; however, the record does not contain evidence that a hearing was held on May 1, 2007.

On July 24, 2007, a Consent Judgment, signed on July 16, 2007, by Judge Johnson and Anna Ferguson, was filed into the record. The July 16, 2007 Consent Judgment stated that a "[c]ourt mediation and an in camera conference [were] held on May 1st, 2007," wherein Ray and Sandra agreed to: (1) a joint custody visitation schedule; (2) a therapist with whom Ashley would receive counseling; (3) submission to an MMPI-2 test; and, (4) other issues relative to visitation. The July 16, 2007 Consent Judgment also provided that Sandra would remove Ashley's picture from her website advertising her photography business.

On September 5, 2007, an Order was filed into the record detailing that "[a] Status Conference was held on August 23, 2007[,] to address several issues relating to custody and visitation in this matter." The Order provided a visitation schedule for the remainder of August and for September and was signed by counsel for Ray and Sandra.

On October 3, 2007, Ray filed a Motion for Visitation Schedule, seeking to

---

(a)  The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court.

(b)  The reasons supporting his claim that notice should not be required.

extend the visitation schedule the parties previously agreed to at the status conference held on August 23, 2007. Judge Johnson signed an Order which set forth a visitation schedule for the remainder of the year and which scheduled a pretrial hearing for October 19, 2007. On October 15, 2007, the pretrial hearing was reset for October 29, 2007, pursuant to Ray's request for a continuance.

On March 18, 2008, an Order was signed by Judge Johnson requiring that Ray and Sandra each pay one-half of Ashley's attorney fees. The Order stated that "the case shall not proceed to the custody litigation until this sum is paid."

On June 5, 2008, Sandra filed a Petition to Alter Visitation Schedule for Recital of the Glory Bound Cloggers.[3] Judge Johnson signed an Order granting Sandra custody of Ashley on June 7, 2008, for the purpose of allowing Ashley to participate in this event.

On May 16, 2008, Ray filed a Motion and Order to Fix asserting "this matter is ripe for trial on the merits; therefore, [he requested] that this matter be set for trial on all issues relating to custody, visitation, child support[,] and spousal support."

On January 30, 2009, Ray filed a Motion and Order to Fix Trial Date referencing the December 7, 2006 Consent Judgment of Temporary Custody, asserting that he "wish[ed] to have this matter scheduled for a permanent custody hearing and all incidental matters thereto."

On March 13, 2009, Sandra filed a Rule for Contempt, to Make Past Due Child Support Plus Legal Interest Executory, for Suspension of Driver's, Occupational and Recreational Licenses, for Attorney Fees and Costs, for Income Assignment Order, Income Tax Exemption and Income Tax Refunds. Specifically,

---

[3]A dance group to whom Ashley belonged.

4

Sandra alleged that Ray "consented to his depositing directly into [her] bank account five hundred dollars ($500.00) from each of his bi-weekly paychecks in child support[;]" however, he "has failed to honor the Court's December [7], 2006 [Consent] Judgment [of Temporary Custody] and is delinquent despite repeated amicable demands that he comply . . . ." According to Sandra, Ray was "in arrearage for child support payments[,] as of March 1, 2009[,] in the amount of $16,519.92, which sum includes the judicial interest owed of $1,168.92 on the underlying unpaid support payments of $15,350.00." Judge Johnson signed an Order scheduling a hearing for May 4, 2009.[4]

On May 14, 2009, Ray filed a Rule for Contempt and Modification of Existing Custody Order. Ray also sought to be awarded sole custody of Ashley based on allegations that Sandra violated the terms of both the December 7, 2006 Consent Judgment of Temporary Custody and the July 16, 2007 Consent Judgment "[o]n several occasions[.]" Judge Johnson signed an Order scheduling a hearing for June 2, 2009.

On May 14, 2009, Sandra filed a Dilatory Exception of Vagueness and Ambiguity, Motion for Production of Mental Health Records and Contested Motion for Continuance.[5] Sandra sought a continuance of the trial court's fixing of Ray's "rule for sole custody for June 2, 2009, . . . due to the need for production by the court appointed medical health professionals and their depositions, which can not be scheduled prior to the hearing date fixed for the contempt rules." In response to Ray's allegations that she should be held in contempt for violating the

---

[4]On May 19, 2009, an Order was filed into the record evidencing that a telephone conference was held in late-April, and, due to a scheduling conflict with Ray's counsel, the hearing on Sandra's rule was rescheduled for June 2, 2009.

[5]On May 29, 2009, Ray filed an Opposition to Defendant's Exception of Vagueness and Ambiguity and Motion to Continue.

court order, Sandra contested the efficacy of the July 16, 2007 Consent Judgment on the basis that she did not enter into "any oral stipulations whatsoever" and that said document did "not bear the signatures of either party to this litigation nor the signatures of either of their respective attorneys at the time." Sandra also requested "that the existing custody regime . . . be modified [making] her the sole custodian and limiting [Ray's] visitation in accordance with the minor child's best interests." Judge Johnson signed an Order scheduling a hearing for June 2, 2009.

On May 26, 2009, Ray filed an Answer to Rule for Contempt, in which he denied failing to pay court-ordered child support. Ray argued that the December 7, 2006 Consent Judgment of Temporary Custody did not "designate[] any amount of payment ordered by the court . . . as child support."

On June 1, 2009, Judge Johnson filed an Order of Recusal into the record wherein she removed herself from the instant litigation on the basis that she "is and can not be fair and impartial[.]" On June 2, 2009, Judge Leo Boothe also filed an Order of Recusal citing "prior ex parte communications about facts of this case" for his abstention from hearing this matter. The supreme court appointed Judge F. Rae Swent to preside over this matter on July 16, 2009.

On August 10, 2009, Ray filed a Petition for Nullity of Judgment. Ray asserted that Judge Johnson "rendered a [C]onsent Judgment of [T]emporary [C]ustody" on December 7, 2006, which "contained a handwritten provision that [he] deposit[] $500.00 into the checking account of [Sandra] . . . without stating the purpose for which it was intended nor did it state the means by which the figure was determined." According to Ray, "all Judgments rendered thus far by Judge Johnson were not impartial nor were they fair to [him,]" and he requested "that all Judgments rendered thus far by Judge Johnson be annulled for vices of substance."

6

Following a three-day hearing held on October 27–28, 2009, and January 29, 2010, the trial court issued written Reasons for Judgment on June 7, 2010. Ray and Sandra were awarded joint custody, with Sandra being designated as the domiciliary parent. Ray was ordered to pay $690.81 in monthly child support. The trial court found Sandra free from fault and in need of support. The trial court also found that Ray had the ability to pay, and he was thus ordered to pay Sandra $200.00 per month as final periodic spousal support. The trial court considered the issue of Ray's alleged child support arrearage "[t]he most difficult aspect of this case[,]" stating:

> The first problem with [Ray's] argument is that [Sandra] filed a [Motion for Contempt for Violation of Custody and Support Orders, Modification of Custody and Support Provisions, and Protective Orders] in March[6] 2007, when the parties did not have a hearing as scheduled for February 1 or February 5, 2007. [Sandra] made a specific complaint that he had not paid the $500.00 due every payday and alleged an arrears of $2,147.30. There can be no way that [Ray] did not know or understand that [Sandra] contended the payments to her were for support, not just house payments. Besides, it does appear that [Ray] filed federal income tax returns that identified the money he paid as spousal support. Further, neither party testified to any agreement to deviate from the $500.00 every payday.

> The second problem with the argument made by both parties is that the amount of payment to [Sandra] was set before she made any demand; that is, she had not yet asked for any child support, interim spousal support or permanent spousal support. Obviously, each of these various types of support have a different standard for calculation, as well as a different time period for imposition and duration. This court cannot guess what the parties intended at any particular time. The court can only look to the party who should bear the burden of proof as to what was meant by a consent judgment.

> Despite the plethora of pleadings filed by both parties in this case, [Ray] never complained of being ordered to pay the $500.00 each payday. He did file a specific pleading that alleged [Sandra] was not helping him pay community debts[,] and he proposed that the property she and the child lived in be sold; but, he never once filed

_____

[6]This pleading was actually filed on April 9, 2007.

7

anything that referenced any misunderstanding or inequity about support or house payments. In particular, he never complained that he could not pay the $500.00, every payday[,] and pay the house note or community debts, also. Instead, after a few initial payments, he just didn't pay [Sandra] anything. He just decided on his own to pay the house notes. Now, he can get credit in the Partition for one half of what he paid, which [Sandra] agrees was $18,039.00, but that is another matter. In this matter of custody and support, he must be found in contempt and stand in judgment for the failure to either pay her as ordered or get the judgment changed. Here, [Ray] never filed any pleading to change, clarify or even reduce the amount he was ordered to pay to [Sandra] in the December 2006 consent judgment.

The trial court found Ray in contempt and calculated the amount he owed pursuant to the December 7, 2006 Consent Judgment of Temporary Custody to be $29,330.62. The trial court also ordered Ray "to pay one-fourth of the attorney fees incurred by [Sandra] as the amount attributable to prosecution of the claim for arrears." The Judgment, signed by the trial court on April 5, 2011, specified that Ray pay Sandra "$5,649.18 in attorney fees plus legal interest on same until paid (one[-]fourth of the $22,596.75 in attorney fees incurred and paid by or on behalf of [Sandra]) as the amount attributable to prosecution of [Sandra's] arrearage claim." From this judgment, Ray appeals.

## ASSIGNMENTS OF ERROR

On appeal, Ray asserts four assignments of error. He contends that the trial court erred in: (1) denying his petition to annul the December 6, 2007 Consent Judgment of Temporary Custody and ordering him to pay child support arrearages in the amount of $29,330.62; (2) awarding Sandra final periodic spousal support; (3) calculating the amount of Sandra's final periodic spousal support award; and, (4) finding him in contempt and ordering that he pay one-fourth of Sandra's attorney fees, which the trial court deemed attributed to her arrearage claim.

8

## STANDARD OF REVIEW

An appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

The standard of review in child custody matters has been clearly stated by this court:

> The trial court is in a better position to evaluate the best interest of the child from its observance of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion.
>
> *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La.10/25/96), 681 So.2d 365.

*Gremillion v. Gremillion*, 07-492, p. 4 (La.App. 3 Cir. 10/3/07), 966 So.2d 1228, 1231-32.

*Westbrook v. Weibel*, 11-910, p. 2 (La.App. 3 Cir. 12/7/11), ___ So.3d ___, ___.

## DISCUSSION

In his first assignment of error, Ray submits that the trial court "committed manifest error in failing to annul the Judgment rendered by Judge Johnson on December 7, 2006 and awarding arrears of [$29,330.62][7] therefrom." Ray sought to annul the December 7, 2006 Consent Judgment of Temporary Custody for vices of substance pursuant to La.Code Civ.P. art. 2004.[8]

[A] final judgment obtained by fraud or ill practices may be annulled,

---

[7]In brief, Ray erroneously states that the trial court awarded arrears of $22,596.75; however, the trial court awarded arrears of $29,330.62 and calculated the attorney fees Sandra incurred to prosecute the arrearage claim as $22,596.75.

[8]Louisiana Code of Civil Procedure Article 2004(A) provides: "A final judgment obtained by fraud or ill practices may be annulled."

9

> La.Code Civ. Proc. art. 2004(A), and trial courts are permitted discretion in deciding when a judgment should be annulled because of fraud or ill practices, to which discretion reviewing courts will defer. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067, 1070 (La.1983).

*Power Mktg. Direct, Inc. v. Foster*, 05-2023, p. 11 (La. 9/6/06), 938 So.2d 662, 670.

The sole basis for Ray's argument that the December 7, 2006 Consent Judgment of Temporary Custody was prejudicial and detrimental to him is that Judge Johnson recused herself in July 2009, citing an inability to be fair and impartial. Ray complains that Judge Johnson made handwritten inscriptions—one of which is the provision that Ray pay Sandra $500.00—on the December 7, 2006 Consent Judgment of Temporary Custody. Ray asserts that "[i]f knowing she could not be impartial, Judge Johnson should have recused herself from the onset of the case rather than rendering a Judgment that is prejudicial and detrimental to him."

Sandra counters that "absolutely no evidence was presented during the pendency of this matter to support [Ray's] contention that Judge Johnson was not fair and impartial when the December 7, 2006 [Consent Judgment of Temporary Custody] was rendered by her." Further, Judge Johnson "made no decisions regarding the December 7, 2006 [Consent Judgment of Temporary Custody] other than taking the stipulation of the parties."

The inference from Ray's references to Judge Johnson's handwritten inscriptions on the December 7, 2006 Consent Judgment of Temporary Custody is judicial misconduct, i.e., fraud or ill practice; however, the record reveals that the handwritten inscriptions are consistent with the oral stipulations made in court. Ray does not allege that falsehoods and misrepresentations made by Sandra caused him to enter into the December 7, 2006 Consent Judgment of Temporary Custody.

Instead, he alleges that Judge Johnson rendered said judgment against him and that said judgment was prejudicial and detrimental to him. There is no evidence to support Ray's allegation that Judge Johnson could not be fair and impartial to him when she signed the stipulation he entered into and which was contained in the December 7, 2006 Consent Judgment of Temporary Custody. We note that Ray was present in court with his attorney. In fact, the signature of Ray's counsel appears on the consent judgment while the signature of Sandra's counsel does not. Though he asserts he was misled into signing the December 7, 2006 Consent Judgment of Temporary Custody by his understanding that it would be temporary, we find this allegation, without more, is insufficient to support a claim to annul the judgment for vice of substance on the bases of fraud or ill practice. Therefore, we find no merit in this contention.

Having found no abuse of the trial court's discretion in denying Ray's Petition for Nullity of Judgment, we find no merit in his contention that the trial court erred by awarding arrears of $29,330.62 therefrom to Sandra. Ray admittedly stopped making payments to Sandra as ordered by the December 7, 2006 Consent Judgment of Temporary Custody. We find no manifest error in the trial court's ruling ordering him to pay the $29,330.62 arrearage pursuant to the December 7, 2006 Consent Judgment of Temporary Custody. This assignment of error is without merit.

In his second assignment of error, Ray argues that the trial court "erred in failing to find that [Sandra] was free from fault in the dissolution of the marriage and awarding her permanent spousal support." Ray asserted that Sandra was at fault in the dissolution of their marriage due to an alleged extramarital relationship with Jeff Goeggle.

11

Louisiana Civil Code Article 111 provides:

> In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage in accordance with the following Articles.

Louisiana Civil Code Article 112 requires that Sandra, seeking final periodic spousal support, prove that she was free from fault in the dissolution of the marriage. *See Terry v. Terry*, 06-1406 (La.App. 3 Cir. 3/28/07), 954 So.2d 790. Louisiana Civil Code Article 112 provides, in pertinent part, "When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support . . . ."

> "It is well settled that a trial court's factual findings in the area of domestic relationships are given great deference on review. If the trial court's findings are reasonable, i.e. not manifestly erroneous or clearly wrong, then they will not be disturbed." [*Terry*, 954 So.2d] at 793 (citing *Coleman v. Coleman*, 541 So.2d 1003 (La.App. 3 Cir.1989).

*Henry v. Henry*, 08-692, p. 2 (La.App. 3 Cir. 12/10/08), 999 So.2d 255, 256-57.

Sandra denied being at fault in the dissolution of the marriage and testified that Ray's temper and threats of violence were an ongoing problem during the marriage. She alleged Ray demanded that she leave the marital home and threatened violence if she returned. Sandra denied having a relationship with Mr. Goeggle prior to Ray's filing of the petition to terminate the marriage. She further contends that the evidence relied upon by the trial court to make its determination was sufficient to serve as a basis for granting her request for final periodic spousal support.

Ray wants this court to assume and accept his contention that because a romantic relationship between Sandra and Mr. Goeggle now exists, one existed

prior to the dissolution of his marriage to Sandra. However, that is not the standard by which this issue is determined. To refute Sandra's assertion that she is free from fault by proving she was guilty of having an extramarital relationship, thereby causing the dissolution of the marriage, Ray must have evidence, not conjecture and innuendo. The trial court found that Sandra met her burden of proof and that Ray did not meet his burden of proof. In fact, the trial court stated that while Ray "proved what he thinks happened, he did not prove that is what actually did happen."

Based on our review of the record, we find the evidence supports the finding that Sandra was free from fault prior to the filing of the proceeding to terminate the marriage as required by La.Civ.Code art. 111. Hence, we likewise find no error in the trial court's ruling on that issue.

In his third assignment of error, Ray asserts that the trial court "committed manifest error in failing to consider [Sandra's] income potential and resources and ordering [him] to pay $690.81 as child support." Ray argues that Sandra receives recurring monetary gifts and is voluntarily underemployed.

For the purpose of determining child support, La.R.S. 9:315(C)(3)(a) (emphasis added) defines "gross income" as:

> The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, *recurring monetary gifts*, annuities, capital gains, social security benefits, workers' compensation benefits, basic and variable allowances for housing and subsistence from military pay and benefits, unemployment insurance benefits, disaster unemployment assistance received from the United States Department of Labor, disability insurance benefits, and spousal support received from a preexisting spousal support obligation[.]

Louisiana Revised Statutes 9:315(C)(5) defines "income" as:

> (a) Actual gross income of a party, if the party is employed to full capacity; or

(b) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.

(c) The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses.

Ray alleges that Sandra received "generous monetary assistance" and that she possessed the ability to earn income from several different sources, i.e., driving a medical transport vehicle, cleaning houses, bookkeeping, and photography. Ray contends that Sandra "was a skilled photographer with about $10,000.00 worth of photographic equipment and that she does wedding photography for income."

Sandra testified that she had not earned money working for a medical transport company for nearly eighteen years and that she owned only two cameras. According to Sandra, by the conclusion of the trial, she had obtained employment, was earning more than she had at any time during her marriage to Ray, and the worksheet of her income and expenses that she presented to the trial court reflected these facts. Sandra denied the allegation that she received recurring monetary gifts. Sandra contends that "[a]bsolutely no evidence was presented that demonstrated that [her] mother, brother or Jeff Goeggle made any consistent monetary gifts to her on a recurring basis; rather, Sandra's family and friends would simply step up and assist her as the need arose."

This issue before the court is whether the trial court was manifestly erroneous in its judgment. *See State, Dep't of Social Services v. Swords*, 08-580 (La.App. 3 Cir. 11/5/08), 996 So.2d 1267 (citing *McDaniel v. McDaniel*, 03-1763

14

(La.App. 3 Cir. 5/19/04), 878 So.2d 686). Considering the record before us, we find sufficient evidence to support the trial court's determination. Ray offered only his testimony, without documentary or other corroborating evidence, to support his allegations that Sandra was receiving recurring monetary gifts and that she was voluntarily underemployed. Considering this was a factual determination and a credibility call, we find no manifest error in the trial court's ruling. Therefore, this assignment of error is without merit.

In his final assignment of error, Ray contends that the trial court manifestly erred in finding him "in contempt of court and [ordering] him to pay the sum of $5,649.18 as attorney[] fees to [Sandra]."

Louisiana Code of Civil Procedure Article 221 defines contempt of court as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair in the dignity of the court or respect for its authority. Contempts of court are two kinds, direct and constructive." Pursuant to La.Code Civ.P. art. 224(2), constructive contempt is "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court[.]" Constructive contempt "must be based on a finding that the accused violated an order of the court 'intentionally, knowingly, and purposefully, without justifiable excuse.'" *Lang v. Asten, Inc.*, 05-1119, p. 1 (La. 1/13/06), 918 So.2d 453, 454 (quoting *Brunet v. Magnolia Quarterboats, Inc.*, 97-187, p. 10 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, 313, *writ denied*, 98-990 (La. 5/29/98), 720 So.2d 343). "A trial court is vested with great discretion to determine whether a party should be held in contempt for wilfully disobeying a trial court judgment." *Barnes v. Barnes*, 07-27, p. 9 (La.App. 3 Cir. 5/2/07), 957 So.2d 251, 257 (citing *Fink v. Bryant*, 01-987 (La. 11/28/01), 801 So.2d 346).

15

As we discussed in Ray's first assignment of error relative to the consent judgment, he admitted that he stopped making payments to Sandra as ordered by the December 7, 2006 Consent Judgment of Temporary Custody. As a result thereby, the trial court rendered judgment in favor of Sandra making Ray's past-due payments executory. Pursuant to this finding, Ray was found to be in contempt and ordered to pay Sandra $5,649.18 in attorney fees.

Ray argues that "[a]ttorney fees are not allowed unless authorized by statute. *Maggio v. Robinson*, 31,913 (La.App. 2 Cir. 5/5/99), 741 So.2d 103." Sandra contends that La.R.S. 9:375(A) grants the trial court the authority to award her attorney fees. We agree with Sandra.

Louisiana Revised Statutes 9:375(A) provides:

> When the court renders judgment in an action to make executory past-due payments under a spousal or child support award, or to make executory past-due installments under an award for contributions made by a spouse to the other spouse's education or training, it shall, except for good cause shown, award attorney's fees and costs to the prevailing party.

In the present case, the trial court made the child support executory. The trial court's written reasons did not set forth any specific finding of "good cause shown." Therefore, the trial court found La.R.S. 9:375 to be applicable herein. We find no manifest error in the trial court's factual determinations and no abuse of its discretion in awarding $5,649.18 in attorney fees to Sandra.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed in its entirety. Costs of this appeal are assessed against Plaintiff/Appellant, Laney Ray Barlow, Jr.

**AFFIRMED.**