# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-635

RANDALL H. BROUSSARD

VERSUS

LINDA WAGGONER BROUSSARD

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 99380
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.

REVERSED AND REMANDED.

**Anthony J. Fontana, Jr.**
**A Professional Law Corporation**
**210 N. Washington Street**
**Abbeville, LA 70510**
**(337) 898-8332**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Randall H. Broussard**

**Gabe A. Duhon**
**James S. Broussard**
**Wyman E. Bankston**
**Duhon & Broussard, L.L.C.**
**P. O. Box 478**
**105 Tivoli Street**
**Abbeville, LA 70511**
**(337) 893-3423**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Linda Waggoner Broussard**

**SAUNDERS, Judge.**

The issue presented in this case is whether a judgment of involuntary dismissal that rejected Defendant-in-Reconvention's claim for final spousal support was manifestly erroneous.

## FACTUAL AND PROCEDURAL HISTORY:

Plaintiff, Randall H. Broussard ("Randall") and Defendant, Linda Waggoner Broussard ("Linda"), were married on August 8, 2008. No children were born of the marriage.

On October 13, 2014, Randall filed a Petition for Divorce under La.Civ.Code art. 103, requesting a divorce on the basis that the parties had lived separate and apart continuously for more than six (6) months, and specifically alleging that the parties separated on November 20, 2013.

On November 5, 2014, Linda filed an Answer and Reconventional Demand for Divorce under La.Civ.Code art. 102, denying, *inter alia*, that the parties separated on November 20, 2013, and asserting instead that the parties separated on July 9, 2014. Linda's reconventional demand alleged, *inter alia*, that she was free from fault in the breakup of the marriage, that at all times relevant she had been a loving, abiding, and dutiful wife to Randall, that Randall's conduct alone was the proximate cause of the separation of the parties, and that Randall was solely responsible for the breakup of the marriage.

A consent judgment adopting certain hearing officer recommendations as modified therein was signed on April 13, 2015, dispensing with the issues of interim spousal support, use of community property, and mutual injunctions regarding community property.

On July 27, 2015 Linda filed a Petition for Final Spousal Support reiterating all of the allegations contained in her Answer and Reconventional Demand and again

averring that she was free from fault in the breakup of the marriage. By order signed July 29, 2015, Linda's Petition for Final Spousal Support was set for a merit trial on the issue of "Legal Fault" to be heard on February 1, 2016.

A Judgment of Divorce was rendered on September 1, 2015, having come before the trial court in the nature of an uncontested matter. Thereafter, on November 12, 2015, Randall filed a Petition for Partition of Community Property and certain discovery was conducted.

The minute entries indicate that the "Fault Hearing for Spousal Support" was continued three times: once on February 1, 2016, again on March 1, 2017, and finally on December 4, 2017, at which time said hearing was reset for February 20, 2018, with all witnesses being ordered to appear without the necessity of being subpoenaed by counsel.

The matter of fault for final spousal support was tried before the trial court on February 20, 2018. After the close of Linda's case, Randall moved for a directed verdict/involuntary dismissal[1] pursuant to La.Code Civ.P. art. 1672(B), contending that Linda failed to show any right to relief under the evidence presented. After hearing oral argument from the parties, the trial court granted the motion for directed verdict/involuntary dismissal. In its written reasons for ruling, the trial court stated:

> The Court has authority in a proceeding for divorce or thereafter, to award final periodic support to a party who is in need of support and who is free from fault in the filing of a proceeding to terminate the marriage. Civil Code Article 111, et seq. The burden of proof is on the claimant. The mover, Mrs. Broussard has simply not met her burden of showing that she is not [sic] free from fault in the breakup of the marriage. Evidence at the hearing was not sufficient to establish that

---

[1] Though "Directed Verdict" is a term of art applicable only to jury trials, a similar mechanism exists applicable to bench trials; namely, the motion for involuntary dismissal pursuant to La.Code Civ.P. art. 1672(B). Courts of Appeal have generally agreed that misdesignation of a motion for involuntary dismissal as a motion for directed verdict is an error of form over substance such that the Court of Appeal considers them both the same motion. *See Andersen v. Succession of Bergeron,* 16-0922 (La.App. 1 Cir. 4/12/17), 217 So.3d 1248, *writ denied*, 17-0760 (La. 9/22/17), 227 So.3d 825.

2

Mrs. Broussard is entitled to relief (that is, permanent spousal support based upon being free from fault).

Judgment was rendered on March 26, 2018, granting Randall's motion for involuntary dismissal and dismissing Linda's claims. It is from this judgment that Linda appeals, alleging six assignments of error.

## ASSIGNMENTS OF ERROR:

1. The trial court committed manifest error in granting Appellee's motion for involuntary dismissal.

2. The trial court committed manifest error in finding that Appellant failed to show that she was free from fault in the breakup of the marriage.

3. The trial court committed manifest error in finding that the timespan of Appellant's relationship with another man was unclear.

4. The trial court committed legal error by misapplication of the burden of proof applicable to a claimant spouse in a fault hearing relative to final spousal support.

5. The trial court committed legal error by misapplication of the legal standards governing fault sufficient to bar a claimant spouse from final spousal support.

6. The trial court committed legal error by misapplication of the legal standards governing involuntary dismissal under [La.Code Civ.P. art.] 1672.

## ASSIGNMENT OF ERROR NUMBER ONE:

In her first assignment of error, Linda contends that the trial court committed manifest error in granting Appellee's motion for involuntary dismissal. We agree.

In *Fontenot v. Safeway Insurance Co. of Louisiana*, 17-780, pp. 3-4 (La.App. 3 Cir. 6/13/18), 249 So.3d 900, 902-03, *writ denied*, 18-1223 (La. 10/29/18), 254 So.3d 1214, (citations omitted), this court stated:

> A motion for involuntary dismissal is the proper procedural vehicle in cases where the action is not tried before a jury. The procedure governing motions for involuntary dismissal is found in La.Code Civ.P. art. 1672(B), which provides as follows:
>
> > B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a

dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Pursuant to Article 1672, the trial court must consider and weigh the Plaintiffs' evidence and dismiss the matter if it determines they have not met their burden of proof. The trial court's grant of an involuntary dismissal is subject to the well-settled manifest error standard of review. Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly erroneous. The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable.

In a motion for involuntary dismissal, "[a] plaintiff is entitled to no special inferences in his favor, but 'uncontroverted testimony should be taken as true to establish a fact for which it is offered absent circumstances in the record casting suspicion on the reliability of the testimony and a sound reason for its rejection.'" *Bartley v. Fondren*, 43,779, p. 6 (La.App. 2 Cir. 12/3/08), 999 So.2d 146, 149. The court has the authority to award final periodic support to "a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage." La.Civ.Code art. 111.

In *Neff v. Neff*, 14-1320, p. 4 (La.App. 3 Cir. 4/1/15), 162 So.3d 732, 736, *writ denied,* 15-1195 (La. 9/25/15), 178 So.3d 566, (citations omitted), this court noted:

Our courts have previously found that fault for the purposes of spousal support is synonymous with the fault grounds previously entitling a spouse to separation or divorce, including adultery, habitual intemperance or excess, conviction of a felony, cruel treatment or outrages, public defamation, abandonment, an attempt on the other's life, fugitive status, and intentional non-support.

In *Hutson v. Hutson*, 39,901, pp. 7-8 (La.App. 2 Cir. 8/9/05), 908 So.2d 1231, 1235-36, (citations omitted), the Louisiana Second Circuit Court of Appeal, in a well-reasoned opinion, addressed how a claimant spouse might satisfy the burden of proof to show freedom of fault:

4

The jurisprudence provides little guidance on how a claimant spouse is to perform the task of proving freedom from fault. While the case law indicates that the burden can be shifted to the non-claimant spouse when the divorce is obtained on the basis of adultery of the non-claimant spouse, there is no indication of how one shifts the burden when a divorce is obtained on the basis of living separate and apart for the requisite period of time.

Ms. Hutson presented evidence in the form of her own testimony and that of her niece, sister and neighbors. She affirmatively stated that she did nothing to break up the marriage. Her niece, sister and neighbors, who had been exposed to the couple at various times throughout the marriage, testified that Ms. Hutson had been a good wife who performed her fair share of the household duties. They testified that the parties rarely argued, and they denied witnessing any of the nagging which Mr. Hutson alleges plagued their marriage.

We find that this evidence is sufficient to establish freedom from fault in instances where the divorce is not obtained on the fault grounds delineated in La. C.C. art. 103. Ms. Hutson made a prima facie showing that she was not at fault in the break up of the marriage by presenting testimony to support her version of the events leading to the break up of the marriage. Such a prima facie showing was sufficient to meet her initial burden of proof. Once that burden was met, the burden shifted to Mr. Hutson to prove conduct on the part of the claimant spouse which rises to the level of fault.

Thus, a claimant spouse must make a prima facie showing that she was not at fault; once she has satisfied that requirement, the burden shifts to the opposing spouse to prove conduct on the part of the claimant spouse sufficient to constitute legal fault and defeat the claim for final spousal support.

In the instant matter, our review of the record reveals Linda's testimony meets the burden of proof necessary to withstand a motion for involuntary dismissal because it shows by a preponderance of the evidence that she did not commit adultery, habitual intemperance or excess, cruel treatment or outrages, public defamation, or abandonment; that she was not convicted of a felony, did not make an attempt on Randall's life, is not a fugitive, and did not intentionally refuse financial support to Randall when he was in necessitous conditions. *Neff*, 162 So.3d at 732. Moreover, Linda's testimony was corroborated by two witnesses, one of

5

whom the court referred to as "impressive." Linda's verified petition avers that she was free from fault in the breakup of the marriage, that at all times relevant she had been a loving, abiding, and dutiful wife to Randall, and that Randall's conduct alone was the proximate cause of the separation of the parties and that Randall was solely responsible for the breakup of the marriage. Linda testified that:

1. During her marriage to Randall she purchased a second home, renovated it herself, used it for family gatherings, and occasionally rented it out.

2. Her work on a farm with all males, with the exception of one female, resulted in friendships with several men.

3. During her marriage to Randall she bore a significant portion of the community expenses and was not a financial burden on Randall.

4. She did not have an extramarital relationship during her marriage to Randall.

5. When she and Randall were having marital discord, she attempted to seek counseling, but Randall refused.

6. She and Randall separated on July 9, 2014, after he packed up her belongings and told her to move on.

7. After she and Randall separated, she attempted to reconcile to no avail.

8. She was stunned by her breakup from Randall and upset and spent most of her time crying.

At this point, the burden shifted to Randall to prove conduct on the part of Linda sufficient to constitute legal fault and defeat the claim for final spousal support. Randall's testimony, contrary to Linda's, failed to carry this burden. Notably, no pleadings filed by Randall alleged fault on Linda's part. Moreover, in his testimony, Randall asserted only two fault grounds to which he attributed causation: abandonment and adultery, neither of which are supported by the record.

"Abandonment occurs when a spouse left 'the matrimonial domicile without lawful cause and constantly refused to return.'" *Miller v. Miller,* 13-1043, p. 8

(La.App. 3 Cir. 4/2/14), 161 So.3d 690, 696, *writ denied*, 14-1607 (La. 10/31/14), 152 So.3d 154 (quoting *Ashworth v. Ashworth*, 11-1270 (La.App. 3 Cir. 3/7/12), 86 So.3d 134, 137.

Randall testified that Linda abandoned the matrimonial domicile as follows:

Q    Are you claiming that Linda abandoned you or the matrimonial domicile?

A    Yes.

Q    All right.  So did you ever ask her to return after y'all separated?

A    There was times that we tried to work things out, but it just – it wasn't going to happen.

Q    That wasn't my question. Did you ever ask her to move back in?

A    No, I didn't.

Contrary to Randall's testimony that Linda abandoned the matrimonial domicile,  Linda testified that Randall moved her out.  Linda testified:

Q    -- the incident that lead [sic] to the separation?

A    Yes, sir.  I was coming back from the farm.  I was working.  And it had started raining and when I passed by the house, he had a trailer backed up under the carport putting my stuff in it.

Q    And "he" meaning Mr. Broussard?

A    Yes.

Linda further testified that she attempted to reconcile and to seek counseling, but that Randall refused both.  Linda testified:

Q    Did ya'll discuss getting  back together?

A    He told me to move on.  When I asked him about it, he told me I needed to move on.
. . . .

Q    Did you ever suggest to your husband that ya'll should attend counseling?

A    Yes, I did.

7

Q   And what was his response?

A   He didn't have a problem.

Q   I'm sorry?

A   He didn't have a problem.

Q   He didn't have a problem with counseling?

A   No.  He didn't need to go.

In order to prove abandonment, Randall must show not only that Linda left the matrimonial domicile,  but also that she "constantly refused to return."  His own testimony shows that this is not the case.  Accordingly, the record does not support a finding of abandonment.

With regard to adultery, Randall's testimony that Linda "pretty much moved out" on October 20, 2013, after he "caught" her boss, Danny Richard, "running through her house in his underwear"  contradicts his verified petition which lists the date of separation as November 20, 2013.  The "house"  that Randall refers to in the October 20, 2013 incident is the one that Linda purchased during their marriage to lease on the weekends, which she did.  It was within "eye distance" of the home he and Linda shared at the time.  Randall testified that on the night of October 20, 2013, Linda, who was renovating the house herself, was "supposedly going paint in the house," but instead, went and picked up her boss, Danny Richard, and brought him to the "house"; that Danny Richard was "supposedly taking a shower";  that upon seeing "a man" running through the house he called Deputy Adrian Conner to report an "intruder," but that by the time Deputy Conner arrived Danny Richard was no longer there.  Significantly, Randall did not testify that he observed anything untoward occur between Linda and Danny Richard on that evening, or any other.  More significantly, it was not the reason the parties separated as Randall did not file for divorce until a year later.

Linda testified that her work for Val Miller at the farm consists of arranging "duck hunts, alligator hunts"; that on the evening of October 20, 2013, there were seven guests staying at Miller's camp when the hot water heater went out; that Danny Richard called her at the "house" where she was painting to ask if he could split the men up between her "house" and another camp on the island so that the men could take showers; that she informed Randall that they were going to be there; that shortly thereafter Randall showed up at the house and "went off on her" – that he had "seen a man running around naked, this and that"; that Danny Richard was the last one to take a shower, but that she never "saw anyone naked." Linda further testified that when Deputy Conner arrived at the "house" she allowed him inside to look at "anything" at which time he observed her "full of paint" with the "darn paintbrush."

The only two allegations of fault that Randall made were abandonment and adultery. As discussed above, abandonment does not apply. Thus, if the parties physically separated on October 20, 2013, the alleged incident of the same date involving Linda's boss might be an independent contributory factor to the physical separation, but for Randall's verified petition alleging a different date of separation; Randall's admission that he waited a year after the separation to file for divorce during which time he thought they could "work it out"; Linda's contradictory testimony alleging a different date of separation; Deputy Conner's contradictory testimony that upon investigation he found no one inside the home, other than Linda, who was painting at the time. The record on this point clearly does not support a finding of adultery.

The other basis for the filing of the petition for divorce based on adultery was Randall's *belief* that Linda had moved another man into her home. Yet, Randall was both unable to recall when that event occurred, or to provide any details in support

of his contention. Instead, Randall's testimony merely indicates that someone told him she had moved someone into her home. Randall's testimony was as follows:

Q       Are you, in fact, claiming that Ms. Linda committed adultery on or before October 13, 2014?

A       I didn't say that I saw it, but it's – everything pointed in that direction.

Q       You at least suspected something, right?

A       Sir?

Q       You suspected adultery?

A       Yeah.

Q       But you don't know for sure?

A       I'm pretty sure, but, no. Definitely? No.

Therefore, at the close of Randall's testimony, the only legal fault asserted as the cause of the breakup of the marriage is Randall's *suspicion* of adultery based on *hearsay* that Linda had moved another man into her home. "To refute [Linda's] assertion that she is free from fault by proving she was guilty of having an extramarital relationship, thereby causing the dissolution of the marriage, [Randall] must have evidence, not conjecture and innuendo." *Barlow v. Barlow*, 11-1286, p. 13 (La.App. 3 Cir. 4/11/12), 87 So.3d 386, 394.

Judy Broussard, Linda's neighbor, corroborates Linda's testimony that she did not engage in an extramarital relationship while married to Randall, by moving another man in with her. Judy, who lived within "spitting distance" of Linda and "saw her all the time," testified:

1.     Linda started dating David "[t]wo to three years ago. They've been split up, I don't know, maybe six or eight months. And she's been seeing him about two years."

2.     If someone had been living with Linda, she would be in a position to know.

3.  That no one was living with Linda.

The divorce action was instituted on October 13, 2014. The fault hearing was held February 20, 2018, nearly three and a half years later. Even taking Judy's longest evidence of "three years ago," Linda would not have started dating David until February 2015, months *after* Randall filed the petition for divorce.

Thus, at the close of Linda's case, when Randall moved for involuntary dismissal, the trial court had (1) Randall's testimony that he s*uspects* but does not know that Linda committed adultery *prior* to his filing for divorce in October 2014; (2) Linda's testimony that she *did not* commit adultery; (3) testimony from Deputy Conner *impeaching* Randall's account of the events of October 20, 2013; and (4) Judy's testimony that Linda started dating as early as 2015, but *never* moved her boyfriend into her home. Much as in *Barlow*, 87 So.3d at 386 the fact that Linda was in a romantic relationship that might have begun as early as 2015, does not mean that said relationship existed prior to the dissolution of the marriage. In fact, all other testimony aside from Randall's *uncorroborated* suspicions makes it more likely than not that no such romantic relationship existed prior to the dissolution of the marriage. The record clearly does not support a finding of fault and we are compelled to find that the trial court's ruling was manifestly erroneous. Accordingly, we reverse the trial court's ruling involuntarily dismissing Linda's claim for final spousal support and remand for further proceedings not inconsistent with this ruling.

## CONCLUSION:

Linda Waggoner Broussard raised six assignments of error as to why the trial court erred in involuntarily dismissing her claim for final spousal support. Finding merit to Ms. Broussard's first assignment of error, that the trial court committed manifest error in granting Appellee's motion for involuntary dismissal, we reverse the trial court's ruling on this issue and remand for further proceedings not

11

inconsistent with this ruling. Our finding in assignment of error number one pretermits a finding in assignments of error two through six.

Costs of these proceedings are assessed to Randall Broussard.

**REVERSED AND REMANDED.**