# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 08-0580

STATE OF LOUISIANA
DEPARTMENT OF SOCIAL SERVICES
OFFICE OF FAMILY SUPPORT
SUPPORT ENFORCEMENT SERVICES

KRISTIE ANDERS

VERSUS

TONY B. SWORDS

************

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT,
PARISH OF NATCHITOCHES, NO. CS 93-2663 A
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and David J. Painter, Judges.

Pickett, J., concurs in the result.

### AFFIRMED IN PART AS AMENDED; REVERSED IN PART; AND RENDERED.

George L. Celles IV
Assistant District Attorney
Post Office Box 486
Natchitoches, LA 71458-0486
(318) 238-4000
COUNSEL FOR PLAINTIFF/APPELLEE:
Kristie Anders

**Jeffrey H. Thomas**
**Thomas Law Firm**
**Post Office Box 548**
**Natchitoches, LA 71458-0548**
**(318) 352-6455**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Tony B. Swords**

PETERS, J.

The defendant, Tony B. Swords, appeals the trial court's judgment increasing his gross monthly salary to properly reflect his job duties in his parents' business and in imputing as income the benefits he receives from his parents in the way of a house note benefit and the payment of property taxes and homeowners' insurance on a house that he rents from them. He further appeals from the trial court's inclusion of the private school tuition in the child support obligation. For the following reasons, we affirm in part as amended, reverse in part, and render.

## DISCUSSION OF THE RECORD

Kristie Anders and Tony B. Swords have never been married, but are the parents of a fifteen-year-old son. The initial child support decree issued in 1994, set Mr. Swords' monthly support obligation at $123.00. The trial court modified the monthly obligation a number of times, with the last modification being rendered by a judgment dated January 9, 2008. In that judgment, the trial court increased Mr. Swords' monthly obligation from $222.00 per month to $559.00 per month.

In awarding the increase, the trial court concluded after a hearing that the evidence established that Mr. Swords was under-employed and that his average monthly salary was $2,318.17, rather than the $1,733.33 he claimed. The trial court based this on a finding that Swords' job duties fell between the categories of heavy and light truck drivers for the Shreveport, Louisiana region, as set forth in a 2007 Louisiana Department of Labor Wage Survey (Wage Survey). Based on the findings of the survey, the trial court averaged the two annual salaries associated with those occupations, which were $33,536.00 and $22,100.00 respectively. The trial court then attributed amounts paid on behalf of Mr. Swords by his parents and concluded that Mr. Swords' average monthly income for the purpose of calculating his child

support obligation should be increased from $2,318.17 to $2,879.90.[1] Finally, the trial court concluded that Ms. Anders satisfied her burden of proving that attendance at the Provencal Christian Academy was necessary to meet the particular needs of the minor child. Based on that conclusion, the trial court included an additional $110.42 in the monthly child support obligation. Applying the child support guidelines found in La.R.S. 9:315.18, the trial court set Mr. Swords' monthly support obligation at $559.00.

## OPINION

In his appeal, Mr. Swords assigns five assignments of error.

1. The District Court erroneously included the cost of tuition in the basic support amount.

2. The District Court improperly utilized the Louisiana Department of Labor Wage Survey in imputing income to Brian Swords.

3. The District Court erroneously imputed a "Home Note Benefit" from parents of Brian Swords.

4. The District Court committed manifest error in imputing income to Brian Swords without finding that he was underemployed.

5. The District Court erroneously imputed as income to Brian Swords the property taxes and insurance paid by Brian Swords' parents on a home owned by them and rented to Brian Swords.

### *Assignment of Error Number One*

In his first assignment of error, Mr. Swords argues that the trial court erred by including the costs of the private school tuition in the monthly child support obligation. He claims that this was error because Ms. Anders failed to prove that

---

[1] The trial court based this increase on its conclusion that Mr. Swords' parents were paying $163.76 per month for property taxes and $161.87 per month for homeowner's insurance premiums for him, and were contributing the equivalent of $236.11 per month toward the monthly rental on a home Mr. Swords and his wife were renting from his parents.

attendance at the school was necessary to satisfy a particular educational need of their son.

Concerning this issue, Ms. Anders testified that her son suffers from allergies and asthma, for which he undergoes breathing treatments twice a year and utilizes an inhaler; and he has difficulties with short term memory as a result of a head trauma he suffered the previous February. According to Ms. Anders, the child cracked his skull in two places and the injury resulted in a swelling of his brain. She also asserted that even prior to this incident, the child struggled in school, but that he struggled worse after the accident. In her opinion, the child benefitted from the move to the private school because of the one-on-one attention available from the teachers. She testified that he is now on the "A" honor roll. The trial court based its approval of the private school tuition in the child support obligation on the increased personal attention the child would receive in that environment.

Louisiana Revised Statutes 9:315.6(1) provides that expenses associated with a child's attendance at a special or private school may be added to the basic child support obligation upon the agreement of the parents or by court order. The parent seeking to include such expenses in the child support has the burden of proving that their child has a particular educational need that is being met by attendance at a particular school. *Basile v. Basile*, 04-25 (La.App. 3 Cir. 5/12/04), 872 So.2d 1274. A trial court's order in this regard will not be reversed in the absence of an abuse of discretion. *Id.*

In this case, we find an abuse of discretion. The only evidence of the child's special needs is the unsupported testimony of Ms. Anders. Thus, we find that the

3

state did not meet its burden of proof on this issue and find that the trial court erred in concluding that attendance at the private school met the child's special needs.

### *Assignment of Error Numbers Two and Four*

In these assignments of error, Mr. Swords argues that the trial court erred in finding that he was underemployed, and in imputing income to him based on his underemployment. He asserts that not only does his physical incapacitation resulting from a childhood illness prevent him from working any more than he currently works, but that the trial court erred in utilizing the Wage Survey to determine his monthly income

Income in child support matters includes the potential income that a parent would be entitled to if that parent is voluntarily unemployed or underemployed. La.R.S. 9:315(C)(5)(b). Additionally, La.R.S. 9:315.11(A) provides that "[i]f a party is voluntarily . . . underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years." In *Harris v. Harris*, 07-966, p. 7 (La.App. 4 Cir. 2/20/08), 976 So.2d 347, 351-52, the court stated:

> Voluntary underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse in reducing his income. *Hansel v. Hansel*, 00-1914, p. 6 (La.App. 4 Cir. 11/21/01), 802 So.2d 875, 889 (citing *Gould v. Gould*, 28,996 (La.App. 2 Cir. 1/24/97), 687 So.2d 685). "Voluntary underemployment is a fact driven consideration." *Koch v. Koch*, 97-1600, p. 5 (La.App. 4 Cir. 4/22/98), 714 So.2d 63, 66. When determining if a party is voluntarily underemployed for purposes of calculating a child support obligation, the court shall consider that party's earning capacity in light of all circumstances. *Peacock v. Peacock*, 39,950, p. 14 (La.App. 2 Cir. 5/4/05), 903 So.2d 506, 516. "A party shall not be deemed voluntarily unemployed or underemployed if . . . the unemployment or underemployment results through no fault or neglect of the party." La. R.S. 9:315(C)(5)(b).

Additionally, a trial court is granted great discretion in child support matters, including credibility determinations as to whether a parent was in good faith in ending or reducing his/her income. *McDaniel v. McDaniel*, 03-1763 (La.App. 3 Cir. 5/19/04), 878 So.2d 686. Thus, a trial court's order of child support is entitled to great deference on review, and any factual determinations made by it will not be reversed absent manifest error. *Id.*

In this matter, the record establishes that Mr. Swords does, in fact, have a physical disability. At the age of three, he was stricken with meningitis and/or encephalitis. He suffered a stroke in conjunction with the disease, the result of which was paralysis on the right side of his body. Eventually, he lost a lung. Despite his physical impairment, Mr. Swords pursued an accounting education at Northwestern State University in Natchitoches, Louisiana, but left school after four years without a degree.

Upon leaving school, Mr. Swords worked for a local company for ten dollars per hour. Sometime thereafter, he began working for his parents' company, Battery Warehouse of Natchitoches, and had worked for that company for the thirteen years prior to the hearing. According to Mr. Swords, he only works three days per week, and drives a sand and gravel truck for the company.[2] With regard to rate of pay, he testified that his base salary is ten dollars per hour, but he is paid for a full forty-hour week. He testified that he does not feel capable of earning more than ten dollars per hour and that the company does not pay him bonuses, commissions, or cash payments for his services.

---

[2]Mr. Swords also testified that occasionally he drives a tow truck; picks up parts; drives a GMC dual-rear-wheel truck to haul batteries, tractors, and a bulldozer; performs vehicle inspections; answers the telephone; and occasionally installs batteries.

Mr. Swords testified that when not working, he enjoys both water and snow skiing, turkey and duck hunting, and fishing. He has full use of his parents' hunting camp and fishing boats and personally owns a ski boat, an all-terrain vehicle, and has access to his father's recreational equipment.

The discovery of Mr. Swords' employment situation is what prompted Jennifer Holton, a Support Enforcement Analyst with the State of Louisiana, Department of Social Services, Office of Family Support (state) to seek an increase in the child support award. She testified that when she learned of Mr. Swords' job duties and the fact that the was earning ten dollars per hour on a forty hour basis while working only three days per week, she concluded that he was being intentionally underpaid. She was also told by Ms. Anders that Mr. Swords was driving a truck outside of his employment with his parents' company for which he received cash payments, and this affected her decision to pursue an increase.[3]

Ms. Holton testified that utilizing the Wage Survey and considering the job duties being performed by Mr. Swords, she identified several employment positions that Mr. Swords could fill and make more money than that which he was making with his parents' company. These included management positions,[4] as well as light and heavy duty truck driving positions. According to Ms. Holton, a heavy duty truck driver in the Shreveport, Louisiana region earns an average of $33,536.00 per year, while a light duty truck driver earns an average of $20,299.00 per year.

In its reasons for judgment, the trial court implicitly found Mr. Swords voluntarily underemployed. It did so by finding that Mr. Swords' job duties fell

[3]The record contains no evidence of this allegation.

[4]The trial court rejected this classification, concluding that Mr. Swords' current position was not that of a manager.

6

within the job categories of a heavy truck driver and a light truck driver. The trial court then averaged the annual salaries of the two positions and reduced that sum to a monthly salary of $2,318.17. The trial court then used this amount as the basis for calculating the child support obligation rather than the $1,733.33 per month claimed by Mr. Swords.

Considering the evidence, we cannot say that the trial court was manifestly erroneous in finding that Mr. Swords is voluntarily underemployed and in imputing additional income to him. Although Mr. Swords argues that his health prevents him from earning more than his present salary, no specific evidence was introduced as to how his condition limits his work capabilities. Further, as noted by the trial court, Mr. Swords manages to participate in numerous outdoor activities despite his stated health problems.

As to Mr. Swords' argument that he is not a full-time truck driver, his testimony indicated that he is the only employee who drives the sand and gravel truck. Presumably, the only reason that he does not drive the truck full-time is because it is not contracted out full time, such as during the winter when it is wet. However, when not driving the larger truck, Mr. Swords' job duties require him to drive the smaller GMC truck to pick up parts and haul various items. Thus, we find no error in the trial court's factual determination that Mr. Swords' job duties fall between that of a heavy and a light truck driver. We further find no error in the trial court's determination that Mr. Swords' potential average monthly salary is $2,318.17, the average of the two salaries.

7

### *Assignment of Error Numbers Three and Five*

In these assignments of error, Mr. Swords argues that the trial court erred by imputing to his salary additional amounts which represented a "house note benefit" and the homeowner's insurance and property taxes paid by his parents. We agree.

Mr. Swords and his wife lease a three bedroom, two bath brick home from his parents for $500.00 per month. The home, located on Cane River Lake in Natchitoches, Louisiana, is approximately 3,000 square feet in size. The trial court imputed to Mr. Swords additional monthly income of $561.74 to balance the benefit he received from renting from his parents.[5]

Louisiana Revised Statutes 9:315(C)(3)(b) provides that gross income includes "[e]xpense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses." Although the trial court and the state obviously felt that the benefits Mr. Swords received by renting from his parents was in the nature of an in-kind payment as a result of his employment, we feel that it should more properly be categorized as income received from any other source, pursuant to La.R.S. 9:315(C)(5)(c). However, no matter the categorization, if proven, these amounts would be considered income and should be added to Mr. Swords' average monthly income for a determination of his monthly child support obligation.

However, after reviewing the evidence, we find that the trial court erred in imputing this amount to Mr. Swords' income. With regard to the "house note

---

[5]The total amount represents the sum of $236.11 (the "house note benefit), $163.76 (the homeowner's insurance paid by Mr. Swords' parents), and $161.87 (the property taxes paid by Mr. Swords' parents).

benefit," the record contains no evidence pertaining to the value of the house or to a fair rental value of the property.[6] In fact, the first time the issue is addressed is in the state's post-trial memorandum. Thus, we find that the trial court erred in relying on the state's argument, rather than on actual evidence, in setting the house note benefit and in imputing that amount to Mr. Swords.

With regard to insurance and property taxes, the evidence did establish that Mr. Swords' parents paid the equivalent of $163.76 per month for property taxes and $161.87 per month for homeowner's insurance and that Mr. Swords made no contribution to that obligation. The trial court imputed both amounts to Mr. Swords. Property taxes and insurance are the obligation of the property owner and not the renter.[7] The fact that the property owner and the renter are related does not change that relationship absent evidence establishing that the property owner and renter have an agreement to the contrary.

**DISPOSITION**

For the foregoing reasons, we reverse the trial court judgment insofar as it added an additional $110.42 to the monthly child support obligation for private school tuition and insofar as it imputed income to Tony B. Swords in the amount of $561.74 for the "house note benefit," the homeowners insurance, and the property taxes. We affirm the trial court's determination that Tony B. Swords was underemployed and in setting his monthly income at $2,318.17 for child support

---

[6]The only reference to the value of the property is found in a response to a request for production of documents propounded to Mr. Swords' parents. Therein, the parents stated that they had attached a copy of the Natchitoches Parish Tax Assessor notice, but no such document is found in the record. When asked at the hearing to state the value of the property, Mr. Swords stated that he did not know.

[7]Mr. Swords testified that he and his wife owned the contents of the home, but nothing in the record suggests that the insurance carried by his parents covered the contents.

purposes. We recalculate the child support award pursuant to La.R.S. 9:315.19 and amend the trial court award from $559.99 to $332.00. We assess twenty-five percent of the cost of this appeal to Tony B. Swords and seventy-five percent of the cost of this appeal to the State of Louisiana, Department of Social Services, Office of Family Support. Pursuant to La.R.S. 13:5112, we set the amount due from the State of Louisiana, Department of Social Services, Office of Family Support, at $428.64.

**AFFIRMED AS AMENDED; REVERSED IN PART; AND RENDERED.**