NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1333

STATE OF LOUISIANA

VERSUS

JONATHAN PARKER

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 01-NS-3890
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Phyllis M. Keaty,
Judges.

AFFIRMED.

Jonathan Parker
830 Belle Drive
Breaux Bridge, LA 70517
(337) 315-9503
DEFENDANT/APPELLANT:
    In Proper Person

**Kenneth R. Martinez**
**P. O. Box 119**
**Ville Platte, LA 70586**
**(337) 363-6639**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **State of Louisiana**
    **Department of Social Services**
    **Child Support Enforcement**

**Ladonte A. Murphy**
**Assistant District Attorney**
**Twenty-Seventh Judicial District**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**
    **Department of Social Services**
    **Child Support Enforcement**

**Clyneatha Ernestine**
**637 Old Dover Road**
**Morris Plains, NJ 07950**

**PETERS, J.**

The defendant, Jonathan Parker, appeals from a trial court judgment upholding the recommendation of a hearing officer that his request for a modification of his child support obligation be rejected. For the following reasons, we affirm the trial court judgment in all respects.

### DISCUSSION OF THE RECORD

In this litigation, Mr. Parker is seeking a reduction in his $789.60 monthly child support obligation.[1] A hearing officer proceeding resulted in a July 27, 2012 recommendation that his request be denied based on the hearing officer's finding that Mr. Parker was voluntarily unemployed. Mr. Parker then sought and received a hearing before the trial court.

At the August 13, 2012 trial court hearing, Mr. Parker testified concerning the reasons for his request and submitted exhibits in support thereof. After considering the record before it, the trial court accepted the recommendation of the hearing officer and rejected Mr. Parker's request for relief. That same day, the trial court executed a judgment to that effect, and this judgment is the basis of the appeal now before us.

Mr. Parker raises two issues on appeal:

1. Whether the court can ignore an EEOC complaint against the Defendant's previous employer for employment and civil rights violations which lead [sic] to the termination of the Defendant and thereby changed his financial circumstances.

2. Whether [] the court can ignore that the Defendant has become self-employed and has produced a contract with the City of Fort Lauderdale, Florida showing a 60 day $35,000 contract award and is not in line with the court's Judgment stating that the Defendant is voluntarily underemployed/unemployed.

---

[1] The record reflects that at the time the hearing officer made the recommendation that his request be denied, Mr. Parker was obligated to pay an additional $26.25 per month to satisfy an arrearage previously established by court proceedings.

# OPINION

The law pertaining to a situation involving a voluntarily unemployed or underemployed parent is found in La.Civ.Code art. 9:315.11:

A. If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. In determining the party's income earning potential, the court may consider the most recently published Louisiana Occupational Employment Wage Survey.

B. The amount of the basic child support obligation calculated in accordance with Subsection A of this Section shall not exceed the amount which the party paying support would have owed had a determination of the other party's income earning potential not been made.

C. A party shall not be deemed voluntarily unemployed or underemployed if he or she has been temporarily unable to find work or has been temporarily forced to take a lower paying job as a direct result of Hurricane Katrina or Rita.

In *State, Department of Social Services v. Swords*, 08-580, pp. 4-5 (La.App. 3 Cir. 11/5/08), 996 So.2d 1267, 1270 (alterations in original), this court set forth the criteria under which an unemployed/underemployed claim should be evaluated.

Income in child support matters includes the potential income that a parent would be entitled to if that parent is voluntarily unemployed or underemployed. La.R.S. 9:315(C)(5)(b). Additionally, La.R.S. 9:315.11(A) provides that "[i]f a party is voluntarily . . . underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years." In *Harris v. Harris*, 07-966, p. 7 (La.App. 4 Cir. 2/20/08), 976 So.2d 347, 351-52, the court stated:

Voluntary underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse in reducing his income. *Hansel v. Hansel*, 00-1914, p. 6 (La.App. 4 Cir. 11/21/01), 802 So.2d 875, 889 (citing *Gould v. Gould*, 28,996 (La.App. 2 Cir. 1/24/97), 687 So.2d 685). "Voluntary underemployment is a fact driven consideration." *Koch v. Koch*, 97-1600, p. 5 (La.App. 4 Cir. 4/22/98), 714 So.2d 63, 66. When determining if a party is voluntarily underemployed for purposes of calculating a child support obligation, the court shall consider that party's earning capacity in light of all circumstances. *Peacock v. Peacock*, 39,950, p. 14 (La.App. 2 Cir. 5/4/05), 903 So.2d 506, 516. "A party shall not be deemed voluntarily unemployed or underemployed if . . . the unemployment

2

or underemployment results through no fault or neglect of the party." La. R.S. 9:315(C)(5)(b).

Additionally, a trial court is granted great discretion in child support matters, including credibility determinations as to whether a parent was in good faith in ending or reducing his/her income. *McDaniel v. McDaniel*, 03-1763 (La.App. 3 Cir. 5/19/04), 878 So.2d 686. Thus, a trial court's order of child support is entitled to great deference on review, and any factual determinations made by it will not be reversed absent manifest error. *Id.*

In this matter, Mr. Parker represented himself, and his initial testimony was somewhat rambling in scope, containing references to issues not before the court. When questioned by the attorney for the state, the record became more clear.

On cross-examination, Mr. Parker testified that he attended four years of college in the field of Industrial Technology, but does not have a degree. Additionally, since leaving college, he has worked in the fields of corrosion management and safety. Prior to attending college, he worked offshore seasonally, earning between $40,000.00 and $50,000.00 per year.

According to Mr. Parker, he began working with Corrpro Companies, Inc. (Corrpro) (which he described as an international company specializing in corrosion control activities) as an offshore field-worker sometime before 2009, and in that year he was promoted to a management position in the company's Lafayette, Louisiana office. Mr. Parker testified that this promotion was for a compensation package totaling $100,000.00 [2] and required that he execute an employment contract.[3]

Mr. Parker, an African-American, testified that he left Corrpro's employment because he concluded that he was the subject of racial discrimination. He reached this conclusion based on discussions he had with other Corrpro managers, who he said were all white. According to Mr. Parker, these managers informed him that they were earning $120,000.00 per year; Corrpro was paying for

---

[2] He testified that the compensation package included a base pay of $72,000.00 per year together with bonus options and a monthly vehicle allowance.

[3] Mr. Parker did not produce the employment contract at trial.

3

them to receive further education; and their vehicle allowance was treated differently than his vehicle allowance.[4] Mr. Parker testified that when he approached his superiors concerning these differences in treatment, the work atmosphere became rather hostile, and he was ultimately fired.

Mr. Parker testified that as a result of his termination from employment, he filed a claim with the Equal Employment Opportunity Commission (EEOC), alleging racial discrimination by Corrpro. Although he did not provide the trial court with a copy of the filing, he did offer a November 15, 2011 letter from the EEOC New Orleans, Louisiana field office informing him that his charge had been selected for voluntary mediation. Attached to the letter was a form provided by the New Orleans field office wherein Mr. Parker agreed to participate in mediation. At the time of the trial court hearing in this matter, no mediation proceeding had taken place, and Mr. Parker presented no evidence to suggest the current status of the complaint. Instead, he interpreted this mediation suggestion as a conclusion by the EEOC that his claim had merit. At the same time, he acknowledged that his claim was still in the investigative phase, and he suggested that it could remain at that stage for another six months due to the EEOC's backlog of cases. Additionally, he introduced a complaint he filed with the Louisiana Commission on Human Rights (the Commission), which is signed by him and is dated November 23, 2011. However, the document contains no markings to suggest it has ever been filed with the Commission. This document does establish, however, that Mr. Parker claims to have been fired by his employer on April 13, 2011.

On further cross-examination, Mr. Parker testified that he sought employment in the corrosion control field after his termination from Corrpro, but received no job offers. His testimony concerning to which companies he made application for employment was evasive. He claimed to have applied to between ten and twenty companies, but could only remember the name of one. Given his

---

[4] Mr. Parker called none of the managers from whom he derived this information to testify.

history with Corrpro, he equated his lack of success in this regard with the belief that his former employer had "blackballed" him in the field. However, Mr. Parker presented no evidence to support this belief.

Mr. Parker further argued to the trial court that he was actually employed at the time of the hearing. He testified that when he concluded he would be unsuccessful in returning to the corrosion control field as an employee, he started his own company, Omnitech, LLC (Omnitech), a Louisiana Limited Liability Company. Through that company, he was the successful bidder on a project to perform water-tank coatings inspection services for the City of Fort Lauderdale, Florida (the City), and he introduced a copy of a January 23, 2012 contract between Omnitech and the City, which provides that Omnitech is to be paid $35,160.00 for providing sixty days of services beginning on January 23, 2012. However, Mr. Parker also testified that the beginning date of the contract had been delayed due to management changes in the City and that it was to begin within ninety days of the hearing date.

The contract document reflects that Omnitech was authorized to transact business in the State of Florida, under the name "Team Omnitech, LLC." It also reflects that Omnitech competed to be awarded the contract through a bid process. In fact, attached to the contract, as Exhibit B, is a statement attributed to Mr. Parker on behalf of the company which states that:

> Omnitech is headquartered in Lafayette, LA. We do have NACE/SSPC certified coating inspectors who reside in Florida with elevated water storage tank inspection experience. I have attached a few resumes and an example daily report. We can also upload daily reports and pictures to Omnitech website/client (login) database. Please visit website at www.teamomnitech.com.

The record contains no evidence to establish how Mr. Parker was able to start and finance a new company capable of competing on an interstate level between his dismissal by Corrpro on April 13, 2011, and January 23, 2012.

Based on his testimony and the exhibits he filed, Mr. Parker asserted to the trial court that he was neither underemployed nor voluntarily unemployed. He

5

anticipated being able to make far more than the salary he was paid by Corrpro, but argued that he should not have to pay his per month child-support obligation while he establishes his new business.

At the close of the hearing, the trial court rendered the following oral reasons for denying Mr. Parker's request for modification of his child support obligation:

> Alright. I'm going to address several things. First of all, I received Exhibit-B and make that part of the original offering that he made, Madam Clerk, and I note that there is a contract for sixty days dated January 23, 2012 for a sixty day employment at $35,000.00 plus. I take the November 15, 2011 letter from the U. S. Equal Employment Opportunity Commission, New Orleans Field Office, which basically states that you have – they're including for your review an agreement to mediate which would allow you as voluntary and they tell you the steps that you can take and that oft times the majority of mediations to court are completed in only one session. Evidently from this correspondence your employer-respondent to your complaint[,] as per your testimony[,] but nothing indicated here is also allow[ed] the opportunity to enter into voluntary mediation. That's all this tells me. The second sheet is an agreement to mediate which you've entered into and indicated your willingness on November 23, 2011 but no agreement by the employer or the respondent, I guess if it's known. I'll also note that there's nothing else from the EEOC. They don't recognize that you have a hostile work environment, that you have a discriminatory environment. They simply say that if there is no agreement to mediate, then you're going to have your matter assigned to an investigator. I'm assuming that's where that is now. So I'll make these observations: The only testimony we have that you agree that you were fired from your position, that you had a position with a base pay of eighty thousand dollars and your understanding of the contractual agreement was that you could earn up to a hundred thousand dollars [with] bonuses and your further testimony which I have to say is self-serving testimony, because there's no foundation beneath it other than your testimony, indicates that your white counterparts – I'm assuming in equal managerial type post. I don't know what locales those managers were in, what the conditions were, what the – whether you all managers operated in the same environment. I can tell you that the cost of living in Houston, cost of living in New York, is different from the cost of living in Lafayette. The cost of living in Opelousas is less than Lafayette. So there are many factors that I can consider. I don't dispute that you feel you were discriminated against. My problem is you bear the burden of proving that under our jurisprudence if you had a job and you were fired from that job then the general rule is that's considered voluntary unemployment. Your explanation may well be valid but it's not proven with anything today, not even the EEOC documents you give me. I recognize that you're going to be making thirty-five thousand dollars in sixty days but it doesn't say when that work is going to commence. The contract has been signed since January 23, 2012. I understand your testimony is that there were some glitches, some things that went wrong. As far as for your underemployment defense,

6

I deny it because I believe that you are certainly a man capable of earning at least by your own testimony eighty thousand dollars a year, that you've worked offshore, that you elected not to continue offshore work and returned to school. You said you had four years of college but no degree as of yet and I'm not sure what that's supposed to mean to me. And I don't dispute that you might have done ten to twenty other – I'll give you the benefit and say twenty other applications. I can tell you that all the jurisprudence I've done and read and reviewed since I've been on this bench with regard to these types of claims, and incidentally, as I said, I've done probably just about every type of EEOC claim, plaintiff and defendant, or employer and employee related. Discrimination. Reverse Discrimination. Hostile environment. Sexual harassment. I don't have any evidence that there's any investigation taking place. The last thing I want to note is even if the EEOC would say, Mr. Parker, we don't find the evidence supporting your discrimination claim, there's nothing that's prohibited you from the time that you lost your employment from filing a suit for breach of contract which would still not have precluded you from seeking an EEOC determination. Absent that, I'm simply going to deny your defense and find that you are underemployed and that's where we are.

We find no manifest error in the trial court's factual findings, nor do we find an abuse of the trial court's great discretion in child support matters. *Swords*, 996 So.2d 1267. Accordingly, we find no error in the trial court's denial of Mr. Parker's request to modify his child support obligation.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment. We assess all costs of this appeal to Jonathan Parker.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

7