STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0494

AARON ALBIN

VERSUS

ALICEN ALBIN

C/W

2025 CA 0495

ALICEN ALBIN

VERSUS

AARON ALBIN

Judgment Rendered: NOV 0 7 2025

* * * * *

Appealed from the
21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket Nos. 180196 c/w 180203

The Honorable Jeffery T. Oglesbee, Judge Presiding

* * * * *

| | |
|---|---|
| Sherman Q. Mack | Counsel for Plaintiff/Appellant, |
| C. Glenn Westmoreland | Aaron Albin |
| Celeste Shields | |
| Albany, Louisiana | |
| | |
| Brian J. Prendergast | Counsel for Defendant/Appellee, |
| Baton Rouge, Louisiana | Alicen Albin |

* * * * *

BEFORE:  MILLER, EDWARDS, AND FIELDS, JJ.

**MILLER, J.**

This matter is before us on appeal by Aaron Albin from a judgment setting an award of child support. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Aaron Albin and Alicen Albin were married on March 15, 2015, and two children were born of their marriage. Aaron and Alicen physically separated on September 7, 2023, and each filed for divorce on October 12, 2023. The matters were subsequently consolidated by the trial court. Following their separation, Alicen retained primary physical custody of the minor children. In her petition for divorce, among other things, Alicen requested that she be awarded an order of support for the minor children and that the parties pay their *pro rata* share of health insurance expenses as well as education and extracurricular expenses for the minor children.[1]

On May 22, 2024, the trial court conducted a hearing to set the child support obligation. Aaron testified that he had not provided Alicen with any monetary support for their minor children since the parties separated and that he was currently unable to work. Aaron testified that he was previously employed in the field of industrial maintenance and that his earnings were approximately $139,700.00 in 2019; $110,000.00 in 2020; $118,000.00 in 2021; and $100,000.00 in 2022. He stated he was most recently employed by Brown and Root, but that he was "laid off" on March 6, 2023.[2] Aaron testified that in 2020 he was being treated for a degenerative disc disease by Dr. Eric Oberlander, a spinal surgeon at The NeuroMedical Center, who, according to Aaron, recommended that he would eventually require a four-level cervical disc fusion. Aaron stated that he did not

---

[1] On December 18, 2023, the trial court signed an interim judgment providing Aaron with supervised visitation of the minor children and for incidental matters.

[2] Aaron introduced no documentary evidence establishing that he was laid off from Brown and Root or providing the reason for same.

have the surgery at the time because he was afraid it would interrupt his income stream and interfere with his family life. Aaron stated that in January of 2024, he saw his pain management physician, Dr. Sean Graham, at The Spine Diagnostic and Pain Treatment Center, and reported that his condition was progressively getting worse. Dr. Graham placed certain physical restrictions on him, including restrictions from overhead work, standing for long periods of time, cervical extension of the neck, and lifting over 25 pounds, which Aaron contended prevented him from obtaining employment in the field of industrial maintenance.

Aaron testified that he filed an application for social security disability benefits in February of 2024, which was pending at the time of the hearing. Aaron introduced a copy of his application for disability benefits at the hearing wherein he reported that his condition became severe enough to keep him from working on March 7, 2023, and his disability began on April 3, 2023.[3] Aaron stated that he has not applied for any jobs recently and does not plan on returning to work until a determination is made on his application for disability benefits. Aaron denied having any monthly income, testified that he lived rent-free in a home owned by his father, that his father paid for all of his expenses, that his father and grandmother gave him cash every two weeks, and that his mother gave him $250.00 per month for groceries. Aaron conceded, however, that in 2023 he earned $14,400.00 from his employment with Brown and Root before he was laid off, and thereafter, he performed work "flipping" houses and restoring residential and commercial properties owned by his father. He further testified that he had received a "small inheritance" from his uncle following the death of his grandmother and that he "liquidated" his crypto account worth $76,000.00 at the time it was liquidated.

---

[3]No documentary evidence was introduced by Aaron to establish his income, expenses, or attempts to find employment within his imposed physical restrictions.

3

Alicen testified that she has been the primary caregiver for their children since she and Aaron physically separated on September 7, 2023. Alicen has been employed as a realtor for ten years. Alicen testified that Aaron had two job interviews after he was laid off, but he told her that he felt they were not a good fit. Alicen testified that Aaron had ongoing neck issues during the length of their marriage but that his neck condition did not render him unable to work. She stated that his condition "wasn't a disability until it needed to be a disability." Alicen testified that she and Aaron invested in a house "flipping" project that he worked on after he was laid off in 2023 from which they each profited approximately $30,000.00. Alicen introduced photographs of Aaron performing manual labor on the project in June of 2023 after the date that he reportedly became disabled. She further testified that their children reported that Aaron frequently rode motorcycles and dirt bikes and that she had photographs and video of Aaron riding dirt bikes after the date he claimed he became disabled. Alicen testified that on March 1, 2024, Aaron, his father, and brother sold seven residential lots and that Aaron profited from the sale of two of the lots. She further stated that Aaron's $76,000.00 crypto account, if he still had it, would have profited $164,000.00 from a one-day spike.

Alicen prepared and introduced a Gross Income spreadsheet based on a four-year average of their gross income from federal income tax returns for the years 2019 through 2022, which showed that Aaron's average annual income was $115,452.00 and average monthly earnings were $9,621.00 and that her annual gross earnings were $66,752.00 and her average monthly gross income was $5,562.00. Alicen also introduced a child support worksheet from the Department of Children and Family Services, which utilized a three-year average of their gross income from tax returns for the years 2020, 2021, and 2022. The worksheet showed that Aaron's gross income was $107,365.00 annually and $8,947.00

4

monthly. It further showed that Alicen's gross income was $66,220.00 annually and $5,518.00 monthly. Based on these figures, Aaron's monthly child support obligation for the two minor children was calculated at $1,904.11. The Gross Income spreadsheet and child support worksheet were introduced without objection.

At the conclusion of the hearing the trial court issued oral reasons, wherein it acknowledged that it had reviewed Aaron's disability application and was aware that Aaron's physician had placed him on certain work restrictions. However, the trial court noted that Aaron's physician did not prohibit him from seeking employment within the imposed physical restrictions. The trial court noted that after reviewing documents outlining "some of [Aaron's] daily activities[,]" it did not find that he was "totally unemployable." The trial court thus determined that because Aaron was not prohibited from seeking employment within his imposed restrictions, Aaron was underemployed and subject to an imputation of income. The trial court recognized that it could not impute Aaron's prior income of over $100,000.00 a year because there was evidence that he was no longer able to do that job. However, the trial court recognized that Aaron earned income flipping houses and determined that he could perform some type of employment.

Thereafter, the trial court signed a judgment on August 21, 2024, ordering: (1) that Aaron is capable of earning a gross income of $5,500.00 per month; that Alicen's gross income is projected to be $5,500.00 per month; and that Aaron shall pay Alicen child support in the amount of $979.50 per month for the two minor children, with payments to commence June 1, 2024; (2) that Aaron's child support obligation is retroactive to the date of judicial demand, deferring the allocation of any credit to a later date; and (3) ordering that Aaron and Alicen each pay 50% of the health insurance premium and any extraordinary medical/dental/vision/daycare expenses for the minor children. Aaron filed a motion for new trial, which was

heard on October 4, 2024, and denied.[4]  On November 26, 2024, the trial court signed a judgment denying the motion for new trial.

Aaron now appeals[5] contending that the trial court:  (1) abused its discretion in imputing a gross monthly income of $5,500.00 to Aaron; (2) failed to articulate sufficient reasons for imputing income; (3) erred in finding that Aaron was voluntarily underemployed; and (4) erred in relying on expense-sharing benefits pursuant to La. R.S. 9:315(d)(5)(c).

## LEGAL PRECEPTS

The guidelines for the determination of child support obligations are set forth in La. R.S. 9:315, *et seq.*, and base the obligation on the combined adjusted monthly gross income of the parents.  St. Philip v. Montalbano, 2016-0254 (La. App. 1ˢᵗ Cir. 10/31/16), 206 So. 3d 909, 912, writ denied, 2016-2110 (La. 1/13/17), 215 So. 3d 255.  Generally, the trial court's order of child support is afforded great weight and will not be disturbed on appeal absent a clear abuse of discretion.  Bell v. Jackson, 2018-1075 (La. App. 1ˢᵗ Cir. 5/31/19), 278 So. 3d 382, 386; Millican v. Wade, 2023-1050 (La. App. 1ˢᵗ Cir. 2/23/24), 384 So. 3d 1011, 1015.  However, a

---

[4]The trial court then heard Alicen's motion to compel and rules for contempt filed by Alicen and Aaron, which were also set for hearing on October 4, 2024.  A judgment of divorce was ultimately signed by the trial court on October 30, 2024.

[5]Aaron's motion for appeal references the trial court's November 26, 2024 judgment denying his motion for new trial.  While a judgment denying a motion for new trial is an interlocutory order and is generally not appealable, when a motion for appeal refers by date to the judgment denying a motion for new trial, but the circumstances indicate that the appellant actually intended to appeal from the final judgment on the merits, the appeal should be maintained as being taken from the judgment on the merits.  See La. C.C.P. art. 2083(C); State v. Titus, 2018-1511 (La. App. 1ˢᵗ Cir. 2/28/19), 274 So. 3d 591, 597 n.6.  It is clear from Aaron's assignments of error in his brief that he intended to appeal the August 21, 2024 judgment on the merits of the rule to set child support.  Accordingly, this court will consider this appeal to be an appeal of the August 21, 2024 judgment on the merits even though the notice of appeal only refers to the judgment denying the motion for new trial.  See Cregg v. Board of Supervisors of Louisiana State University & Agricultural & Mechanical College, 2023-0127 (La. App. 1ˢᵗ Cir. 3/1/24), 385 So. 3d 280, 286, writ denied, 2024-00409 (La. 6/5/24), 385 So. 3d 1158; State v. Titus, 274 So. 3d at 597 n.6.

We further note that the evidence introduced on October 4, 2024, in support of Alicen's motion to compel and Alicen's and Aaron's rules for contempt, as well as the evidence introduced at a subsequent hearing on December 11, 2024, was lodged with this record on appeal.  However, the only evidence we will consider in the instant appeal of the August 21, 2024 judgment is the evidence introduced at the May 22, 2024 hearing on the rule to set child support.

trial court's factual conclusions regarding financial matters underlying a child support award, determination of the monthly gross income of a parent, and the parents' credibility is subject to a manifest error standard of review. Bell, 278 So. 3d at 385; Millican, 384 So. 3d at 1015.

In calculating a basic child support obligation, each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. La. R.S. 9:315.2(A).[6]

"Gross income" means income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, recurring monetary gifts, annuities, capital gains, social security benefits, workers' compensation benefits, basic and variable allowances for housing and subsistence from military pay and benefits, unemployment insurance benefits, and disability insurance benefits. La. R.S. 9:315(C)(3)(a). Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses, are also considered gross income. Such payments include but are not limited to a company car, free housing, or reimbursed meals. La. R.S. 9:315(C)(3)(b). Moreover, gross income includes gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. La. R.S. 9:315(C)(3)(c).

"Adjusted gross income" means gross income less amounts owed for preexisting child or spousal support obligations pursuant to a court order and,

---

[6]As previously noted, Aaron provided no information concerning his income.

7

subject to the court's discretion, amounts paid on behalf of a party's minor child, who is not the subject of the action of the court. La. R.S. 9:315(C).

"Income" includes the potential income of a voluntarily unemployed or underemployed party. La. R.S. 9:315(C)(5)(b).

## DISCUSSION[7]

### Finding of Voluntary Underemployment

We first address Aaron's contention that the trial court erred in finding that he was voluntarily underemployed.

Generally, the obligation a parent owes to support their children is based on his or her gross income. See La. R.S. 9:315.2(A). However, if a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of the party's income earning potential (rather than actual gross income). La. R.S. 9:315.11(A)(1);[8] see also La. R.S. 9:315(C)(5)(b); Kott v. Kott, 2020-0873 (La. App. 1st Cir. 4/16/21), 324 So. 3d 165, 174. In determining whether to impute income to a party, the court's considerations shall include, to the extent known, all of the following:

(a) Assets owned or held by the party.

(b) Residence.

(c) Employment and earnings history.

(d) Job skills.

(e) Educational attainment.

(f) Literacy.

---

[7]Following the lodging of this appeal, Alicen filed a motion to supplement the appellate record with a spreadsheet captioned "Gross Income," which was introduced at the May 22, 2024 hearing, but was missing from the appellate record. We granted the motion. Alicen subsequently filed a second motion to supplement the appellate record with "[a]ll pleadings, evidence, and minutes entries filed into trial court docket number 180,151, including but not limited to, [Alicen's] January 9, 2024 motion to compel." This motion was denied as such request is more properly directed to the district court.

[8]Louisiana Revised Statutes 9:315.11(A)(1) provides exceptions if the party is physically or mentally incapacitated or is caring for a child of the parties under the age of five.

8

(g) Age and health.

(h) Criminal record and other employment barriers.

(i) Record of seeking work.

(j) The local job market.

(k) The availability of employers willing to hire the noncustodial parent.

(l) Prevailing earnings level in the local community.

(m) Other relevant background factors in the case.

La. R.S. 9:315.11(A)(1).

A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. La. R.S. 9:315(C)(5)(b). The party alleging the other is underemployed has the burden of proving such underemployment. Triche v. Triche, 24-270 (La. App. 5th Cir. 2/26/25), 406 So. 3d 1205, 1209, writ denied, 2025-00401 (La. 6/25/25), 412 So. 3d 222.

Voluntary unemployment or underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse. Romanowski v. Romanowski, 2003-0124 (La. App. 1st Cir. 2/23/04), 873 So. 2d 656, 660. Generally, where a parent's voluntary unemployment or underemployment was found to be in good faith, courts have recognized extenuating circumstances beyond that parent's control, which influenced or necessitated the voluntary change in employment. Kott, 324 So. 3d at 174. The factual determination of whether a party is in good faith in ending or reducing his income will not be disturbed in the absence of manifest error. Lowe v. Bacon, 2018-1549 (La. App. 1st Cir. 2/28/18), 2019 WL 1007105, *2 (unpublished).

The parties do not dispute that Aaron suffered from a degenerative neck condition for which he sought treatment for years. Yet, in spite of this condition,

9

Alicen offered evidence that over the course of these years, Aaron was able to maintain full-time employment in the industrial maintenance field, perform work "flipping" houses, and renovating residential and commercial properties. He was able to ride motorcycles and dirt bikes even after the time that he indicated he became disabled on his application for disability benefits.

Aaron did not disclose the reason he was "laid off." Aaron applied for and received unemployment benefits for three weeks after he was first laid off. However, he was unable to attend job fairs as required to maintain the benefits because he was busy flipping houses. Aaron failed to produce any evidence that he had attempted to find employment within his physical restrictions even though his disability application indicated that he was capable of performing light duty work. Moreover, Aaron failed to introduce any evidence to establish how his condition limits his work capabilities. In fact, Aaron candidly admitted that he had no intention of seeking any employment until there was a ruling on his disability application.

After reviewing the evidence and listening to the testimony of the parties, the trial court determined that "[j]ust because [Aaron] can't do certain things doesn't mean [he's] totally unemployable. It just means that [he] may have to seek some other type of employment." The trial court's factual findings regarding Aaron's employability were based heavily on credibility determinations. Thus, the manifest error standard demands that we accord great deference to the trial court. See Kott, 324 So. 3d at 175. Considering the evidence, and applying the considerations set forth in La. R.S. 9:315.11 to the extent they are known, we cannot say the trial court was manifestly erroneous in finding that Aaron is voluntarily underemployed. See State, Dept. of Social Services v. Swords, 2008-0580 (La. App. 3rd Cir. 11/5/08), 996 So. 2d 1267, 1271.

This assignment lacks merit.

10

## Imputation of Income

Aaron next contends that the trial court erred in imputing a gross monthly income of $5,500.00 to him. In support, Aaron argues that the "record contains insufficient evidence" to support the imputation of $5,500.00 as his monthly income. On review, we find this argument disingenuous considering that Aaron failed to produce any documentation to support his income.

Aaron's income prior to 2023 was established by his testimony as well as the Gross Income spreadsheet introduced at trial by Alicen. In 2023, although Aaron testified that his monthly income was "zero," he acknowledged that he earned $14,400.00 while employed by Brown and Root; that he received $31,000.00 in October of 2023 from flipping a house with Alicen; that he inherited money, which was in his savings account; that he has a "crypto currency account" of over $76,000.00 (that he claimed "doesn't exist anymore" because he converted it into miscellaneous things such as bitcoin, etherum, h-bar, and which he kept in his father's safe); and that he received $800.00 in cash every month from his father and grandmother. Aaron testified that he had not filed a federal income tax return yet for 2023. Aside from Aaron's testimony, he introduced no documentary evidence to establish or otherwise verify his income.

Aaron had a duty to provide accurate and complete evidence of his income. See La. R.S. 9:315.2(A); Millican, 384 So. 3d at 1016. Where a party ignores a trial court's orders to produce evidence of income, that party cannot seek to his or her contemptuous behavior in his or her favor to reverse the trial court's child support order. See Millican, 384 So. 3d at 1016. Mindful of the important policy considerations associated with the setting of child support, an obligor parent should not be allowed to benefit from his own recalcitrance. Millican, 384 So. 3d at 1016, citing State in Interest of Washington v. Bourgeois, 2022-0931 (La. App. 1ˢᵗ Cir. 3/8/23), 2023 WL 2397373, *3 (unpublished). Thus, when a party fails to

introduce accurate and complete evidence of his or her current income, a court may nonetheless find that the record contains sufficient evidence with which to calculate the child support obligation. See Flowers v. Tasker, 2024-0690 (La. App. 1st Cir. 2/28/25), 407 So. 3d 927, 945.

On review of the record before us, we find the trial court's imputation of $5,500.00 per month as Aaron's gross income reasonable and amply supported by the record. We note that this calculation represents a roughly 40% downward departure from Aaron's average income for tax years 2019 through 2022. Thus, we find no merit to this assignment of error.

### Reasons for the Income Imputation

Next, Aaron contends that the trial court failed to provide sufficient reasons for the income imputation. In support of his argument, Aaron relies on Reggio v. Reggio, 2006-0800 (La. App. 5th Cir. 3/13/07), 956 So. 2d 637.

At the outset, we find that Reggio is distinguishable from the instant case and thus unpersuasive. In Reggio, the parties agreed to submit the issue of child support to the trial court by briefs only without a hearing. See Reggio, 956 So. 2d at 639. Moreover, in Reggio, the trial court provided **no** "reasons or a basis for its award of child and spousal support, nor did it implicitly or explicitly find whether or not Mr. Reggio was underemployed." See Reggio, 956 So. 2d at 641. In furthering the distinction, in Reggio, the record contained no information regarding Ms. Reggio's education or past work experience in order to attribute a particular income to her. The appellate court expressed that it was unable to "ascertain how the trial court arrived at the amount of child support set forth in its judgment" and thus remanded the matter to the trial court to determine whether or not Mr. Reggio was underemployed, his monthly income, and the amount of income attributable to Ms. Reggio for her lack of employment. See Reggio, 956 So. 2d at 641.

12

In the instant case, the trial court set forth extensive reasons for its imputation of income based on its determination that Aaron was underemployed, which outlined the evidence of record it considered in support of its award. The trial court reasoned as follows:

> This matter comes before this court pursuant to a setting of the child support obligation for Mr. and Mrs. Albin's two minor children. As I previously stated, we are going to use ... Worksheet "A." It has been stipulated that Ms. Albin is the primary custodial caretaker of the two minor children. In order for the court to set the basic child support obligation, the court must determine the income of the parties.
>
> Now, this is what I have for evidence of income, other than the testimony of Mr. and Mrs. Albin. I have what purports to be a proposed worksheet for child support prepared by Ms. Albin, where she suggests either that she makes $5,500.00 a month or she makes $1,800.00 a month, and that Mr. Albin makes about $9,000.00 a month or he makes $7,854.00 per month.
>
> I have a spreadsheet which looks like more or less community obligations, for lack of a better word, that the parties were contributing to.
>
> What I do know is both Mr. and Mrs. Albin were consistent with their testimony that in March of 2023 Mr. Albin was either laid off, quit, but is no longer employed by his previous employer. From March of 2023 until the parties separated sometime in September of 2023, they worked together on an investment property, which Ms. Albin has introduced some photographs of Mr. Albin actually working, Mr. Albin has testified that, quote, it was more or less like a full-time job. As a result of the flip house, the parties profited, even though they did it together as husband and wife, they each profited separately $30,000.00 per year.
>
> In reviewing Mr. Albin's exhibit relative to his disability documents, he indicated in 2023 he had gross wages of about $14,000.00. I'm assuming - - and again, this is an assumption on my part - - that that was income derived from January until March when he was laid off, and he didn't count the $30,000.00 that he made flipping the house.
>
> Ms. Albin has testified that she's a real estate agent, and that for 2024 she's only been able, due to the market - - I'm not making an insinuation about your ability as a real estate agent, but that for 2024 you've only closed on one house, which gave you a gross income of about $5,200.00 in January. However, historically you testified that your income is anywhere from $60,000.00 to $70,000.00 per year.
>
> Mr. Albin has suggested that he should be, I guess, imputed with no income based upon his application for disability.

Louisiana Revised Statute[s] 9:315.11 relative to voluntarily unemployed or under employed parties [states:]

* * *

Mr. Albin, I understand, and I - - I took the time to review your disability documents. I understand you've applied for disability, and I do see in there where your doctor has placed certain work restrictions on you. What I couldn't find in there - - and I'll be happy if somebody can point it out to me - - where it says you're prohibited from seeking any employment.

Yes, I agree with you that there's a lot of work restrictions on there. But I also reviewed the documents that you - - that you and your father submitted about some of your daily activities, about what you are able to do and what you are not able to do. Okay. So just because you can't do certain things doesn't mean you're totally unemployable. It just means that you may have to seek some other type of employment. Therefore, I'm not finding that you are completely physically or mentally incapacitated to the point where I cannot impute you income.

However, based upon the limited evidence and testimony that's been presented here today, I also don't believe I can impute you with what your prior income was when you were making over $100,000.00 a year, because there is at least some evidence that you're not able to do that job. But, you made $30,000.00 flipping a house. Ms. Albin has testified, although there is no proof, that you may have - - you may have profited from the sale of certain lots. In reviewing the documents, I believe that you can at least have some type of employment.

Therefore, I am going to judicially determine that Ms. Albin's gross monthly income is $5,500.00 per month, and I'm going to impute the same income to Mr. Albin.

On review, we find that in its reasons, the trial court explained in detail the evidence introduced, which supported its determination of the amounts of monthly gross income imputed to the parties. As such, we find the trial court's decision rested upon sufficient reasons for imputing income. This assignment lacks merit.

### Expense-Sharing Benefits

In his final assignment of error, Aaron contends that the trial court erred in considering "expense-sharing benefits" under La. R.S. 9:315(C)(5)(c), which Aaron contends are confined to expense-sharing "in the context of [a] party's

14

remarriage," in determining his income. We disagree with Aaron's narrow interpretation of the statute.

Louisiana Revised Statute 9:315(C)(5)(c) provides that:

> The court may also consider as income the benefits a party derives from expense-sharing *or other sources*; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses.

(Emphasis added.)

A plain reading of the statute indicates that the benefits Aaron derives from other sources, i.e., his family, may be considered income. Consistent with the language of the statute, courts have interpreted La. R.S. 9:315(C)(5)(c) to include benefits a party derives from family members. See Bordelon v. Bordelon, 55,983 (La. App. 2nd Cir. 1/15/25), 402 So. 3d 714, 728-729, writ denied, 2025-00339 (La. 5/29/25), 410 So. 3d 145.

Because the language of the statute providing that the court "may" consider as income the benefits a party derives from other sources is permissive, not mandatory, it is within the discretion of the trial court to include or disallow such "benefits." Bordelon, 402 So. 3d at 727. The trial court's decision will not be disturbed in the absence of an abuse of discretion. Triche, 406 So. 3d at 1212.

Aaron candidly testified that his sole source of support is from his father and other family members. Aaron testified that he lived in a home owned by his father with a rental value of approximately $1,200.00 per month free of charge; that his father paid his car note of $140.00 per month, automobile insurance of $290.00 per month, and testosterone treatments of $75.00 per month; that his mother gave him $250.00 per month for groceries; and that his father gave him $600.00 cash per month and his grandmother gave him $200.00 cash per month. Aaron

acknowledged that overall, he received total benefits in the amount of nearly $3,200.00 per month from his family.

These benefits Aaron received from other sources, his family members, may be considered by the trial court as income. La. R.S. 9:315(C)(5)(c). Thus, to the extent that the trial court considered as income the benefits Aaron derived from his family, which directly reduced his actual expenses, we find no abuse of the trial court's discretion. This assignment lacks merit.

## CONCLUSION

For the above and foregoing reasons, the August 21, 2024 judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant, Aaron Albin.

**AFFIRMED.**